OPINION OF THE COURT
Wachtler, J.
The petitioner, Westchester Rockland Newspapers, Inc., commenced this proceeding to vacate an order which excluded the public and the press from a pretrial mental competency hearing in a criminal case in which the accused was charged with rape. The order had been entered, at the request of the accused, by the respondent, Judge Russell R. Leggett, who presided at the hearing. The Appellate Division upheld the order and dismissed the petition. Westchester Rockland Newspapers, Inc., has now appealed to this court claiming that the order closing the hearing violates its right to hear and report matters of public interest and concern, as guaranteed by various statutory and constitutional provisions.
The case, once again, imposes upon the courts the obligation of reconciling the competing rights of the accused to a fair trial free of damaging pretrial publicity, with the *435 right of the public to be informed, particularly by the press, of what takes place in the courts. It is a sequel to Matter of Gannett Co. v De Pasquale (43 NY2d 370) in which this court, and the United States Supreme Court (443 US 368, 99 S Ct 2898), recently held that a court may, upon application by the accused, close a pretrial suppression hearing in order to assure a fair trial. Here, however, we are concerned with a pretrial competency hearing which, in purpose, scope and potential impact on the rights of the accused is different from a pretrial suppression hearing.
This case began in 1976. In the summer and fall of that year several small girls and young women were raped or sexually assaulted in Westchester County. The crimes were reported by the local media, including the petitioner’s newspaper, the Reporter Dispatch. In November, 1976 the police arrested Alexander Ver rone who was later indicted for the crimes. After Verrone had been arraigned and held without bail, his attorney served notice that he intended to raise insanity as a defense at trial.
Defense counsel also applied to have the court determine whether the defendant was mentally fit to stand trial (CPU art 730). Preliminarily the court directed that the defendant be examined professionally. When the court received the report of the examining physicians, which apparently indicated that the defendant was not competent to stand trial, the court ordered that a hearing be held.
The hearing commenced on March 27, 1978. Several reporters, including one from the petitioner’s newspaper, were present in the courtroom. But before any testimony was taken defense counsel made an oral application to have the public and the press excluded from the courtroom throughout the hearing. He noted that the case, including all court proceedings, had been regularly reported in the media and claimed that pretrial reporting of the defendant’s mental condition might prejudice his trial. He urged that if he raised the insanity defense at trial, the doctor’s reports and testimony admitted at the hearing "may become relevant during the trial.” He also argued that if he later chose not to pursue the insanity issue at trial, the public, and thus potential jurors, may learn that the defendant has a mental problem although such proof might otherwise be inadmissible at trial. The District Attorney did not oppose the application. He stated, *436 however, that he did not believe that the insanity issue would "come up” at the hearing.
The court, the District Attorney and defense counsel then withdrew from the courtroom and continued the argument on the motion out of the hearing of the public. Afterwards the court returned to the courtroom and announced that the defense motion would be granted for the reasons stated by counsel in open court, supported by details revealed in camera. The court, however, refused to disclose these details because that "would be self-defeating”. As a second ground for closing the hearing the court relied on section 4 of the Judiciary Law and stated that this section authorized "the Court to close any case that involves sexual charges.”
The newspaper reporters immediately protested this ruling. The following day petitioner’s reporter returned with counsel to have the court vacate the closure order on the ground that it violated the constitutional (US Const, 1st, 6th Arndts; and NY Const, art I, § 8) and statutory rights (Judiciary Law, § 4) of the public and the press. Although the court entertained extended argument, both at the time of the original protest and when counsel appeared, he adhered to the original decision. The public, including the press, could not attend the hearing, nor were they permitted access to transcripts of the proceedings from which they had been excluded.
The petitioners then sought to have the order set aside by commencing this article 78 proceeding in the Appellate Division. While this proceeding was pending, however, the competency hearing was completed. The Appellate Division dismissed the petition on the ground that (1) the matter was now moot, and even if deemed not to be moot (2) the order closing the proceedings "constituted a proper exercise of discretion (see Matter of Gannett Co. v De Pasquale, 43 NY2d 370).”
 Although the competency hearing has been concluded, the court’s order still precludes the petitioner from gaining access to the transcripts of those portions of the proceedings which were held behind closed doors.[1] Thus the petition is not moot to the extent that it seeks to gain access to those transcripts. In addition, in cases such as this, we have traditionally retained jurisdiction, despite a claim of mootness, *437 because of the importance of the question involved, the possibility of recurrence, and the fact that orders of this nature quickly expire and thus typically evade review (see, e.g., Matter of Gannett Co. v De Pasquale, supra, at p 376).[2]
In Gannett Co. v De Pasquale (443 US 368, 99 S Ct 2898, supra) the United States Supreme Court held that the Sixth Amendment guarantee of a public trial belonged to the defendant alone, and did not insure to the public and the press an independent right of access to pretrial proceedings. Under New York law, however, the public trial guarantee is not so narrowly viewed.
In this State we have recognized that open court proceedings serve several purposes. First, "contemporaneous review in the forum of public opinion” (Matter of Oliver, 333 US 257, 270) serves to protect the accused from "secret inquisitional techniques” and unjust persecution by public officials and "goes far toward insuring him the fair trial to which he is entitled” (People v Jelke, 308 NY 56, 62). Thus, like the Sixth Amendment, our statutes have provided that the accused is entitled to a public trial (Civil Rights Law, § 12; former Code Crim Pro, § 8; People v Jelke, supra; Matter of Gannett Co. v De Pasquale, 43 NY2d 370, 376, supra).
The public, of course, is not only concerned with seeing that the accused is fairly treated. The public also has an interest in seeing that there is justice for the accuser — the police and prosecutors who must enforce the law, and the victims of crime who suffer when the law is not enforced with vigor and impartiality. And when justice has been done, public awareness "serve[s] to instill a sense of public trust in our judicial process” (People v Hinton, 31 NY2d 71, 73) by assuring the innocent and impressing the guilty with the power of the rule of law. Justice must not only be done; it must be perceived as being done. Thus section 4 of the Judiciary Law provides: "The sittings of every court within this state shall be public, and every citizen may freely attend the same”. This we have held is a right which may be asserted by the public and the press in civil (cf. Lee v Brooklyn Union Pub. Co., 209 NY 245, 248, 249) and criminal cases (Matter of Gannett Co. v De Pasquale, 43 NY2d 370, supra; People v Jones, 47 NY2d 409; *438 but cf. Matter of United Press Assns. v Valente, 308 NY 71, where the question was not decided by a majority of the court; see, also, Matter of Oliver v Postel, 30 NY2d 171, 179).
But that is only part of the problem. We must also recognize that publicity does not always insure the defendant a fair trial and, in fact, extensive publicity often has the opposite effect of endangering the defendant’s right to a fair trial in the community (see, e.g., Sheppard v Maxwell, 384 US 333). Indeed "the trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity. Sheppard v. Maxwell, supra” (Gannett Co. v De Pasquale, 443 US 368, 99 S Ct 2898, 2904, supra). This is essentially a question of degree. Fairness to the accused does not mean that the community should be totally ignorant of his activities, or that he is entitled to a jury composed only of those who have no knowledge of the case or his character and prior involvements with the law (see, e.g., Murphy v Florida, 421 US 794, 799; People v Moore, 42 NY2d 421, 431). But the accused should not be required to face trial in open court only after he has already been convicted in a "trial by newspaper”, particularly when the newspaper accounts include highly prejudicial evidence which would be inadmissible at trial (Sheppard v Maxwell, supra).
Thus the right of the public and the press to attend court proceedings is not absolute. All court proceedings are presumptively open to the public, but when this would jeopardize the right of the accused to a fair trial, the competing interests must be balanced and reconciled as far as possible.
Our decision in Gannett struck the balance in favor of the accused because of the grave threat that suppressed evidence, if publicly disclosed prior to trial, would virtually eliminate the possibility that the accused would receive a fair trial in a highly publicized case. The very purpose of pretrial suppression hearings is to determine whether certain evidence should be submitted to the jury at trial. They usually involve the admissibility of confession's, eyewitness identifications, contraband, fruits or evidence of crime, or wiretap recordings (see CPL 710.20) — the type of proof which may often be considered extremely persuasive, if not conclusive evidence of guilt. Indeed we have recognized that "nothing could be more conclusive evidence of the defendant’s guilt than a signed confession” (People v Jones, 47 NY2d 528, 534).
Because this type of proof is so difficult, and in some cases *439 impossible, for jurors to forget or ignore once it has been revealed, the law has provided that any question concerning its admissibility should be decided in a separate hearing out of the presence of the jury (see, e.g., Jackson v Denno, 378 US 368; People v Huntley, 15 NY2d 72). And recognizing the startling effect that admission of this type of proof is likely to have on the defendant’s case, the law in this State also provides that the hearing be held prior to trial so that the defendant may know in advance the risks he faces, and thus be able to prepare his case accordingly (People v Briggs, 38 NY2d 319, 323; People v Spruille, 47 NY2d 869). In short, pretrial suppression hearings are often a potent source for the revelation of evidence which is both highly prejudicial to the defendant’s case and not properly admissible at trial.
If these hearings were open to the public and the press in a well-publicized case, it is most likely that the substance of the evidence would be disclosed to the community from which the jurors would be drawn, even though the court may ultimately rule that the evidence should not be submitted to the jury at trial. This would not only destroy the purpose for which the hearing was held, but would, perversely, have the very opposite effect of that intended and desired. Instead of shielding the jurors from evidence they should not hear, the public airing at the pretrial suppression hearing would serve to broadcast the evidence to most, if not all potential jurors. Because of the obvious threat that public attendance at these hearings might pose to the defendant’s right to a fair trial and the integrity and effectiveness of the judicial process in a highly publicized case, we held in Gannett that the defendant could request that the hearing be closed to the public and that the court did not lack the inherent power to grant the request if that was necessary to preserve the defendant’s right to a fair trial in the particular case.
But we did not mean to suggest that closure would be necessary or even appropriate in all pretrial proceedings. There would, for instance, be little justification for holding a private arraignment (cf. Matter of Rudd v Hazard, 266 NY 302). A public reading of the charges and the defendant’s plea will rarely help the defendant’s case. But not every disclosure about the case and the defendant’s involvement in it jeopardizes his right to a fair trial, even though he may prefer, for strategic reasons, that there be no publicity prior to trial of anything which is not unequivocally beneficial to his case (see, *440 e.g., Murphy v Florida, 421 US 794, supra; People v Moore, 42 NY2d 421). Fairness to the accused does not require that his appearance at the trial should come as a complete surprise to the community.
In any criminal case there are bound to be numerous pretrial proceedings. These proceedings often consume as much time as the trial. In many criminal cases these proceedings eliminate the need for a trial because either the charges are dismissed or the determination at the hearing substantially affects or destroys a party’s chance of succeeding at trial (see, e.g., People v Grant, 45 NY2d 366, 379; Matter of Forte v Supreme Ct. of State of N. Y., 48 NY2d 179). At the present time, in fact in most criminal cases, there are only pretrial proceedings. Thus if the public is routinely excluded from all proceedings prior to trial, most of the work of the criminal courts will be done behind closed doors.
The right of the public to attend court proceedings generally includes pretrial proceedings in criminal cases (Matter of Gannett Co. v De Pasquale, 43 NY2d 370, 376, 377, supra). Although evidence submitted at these proceedings will not always benefit the defendant’s case, it generally will not involve a possibly inadmissible confession or other legal bombshell which would hopelessly jeopardize his right to a fair trial if made available to the public. Certainly in the vast majority of commonplace criminal cases, where there is no publicity, permitting the public to attend pretrial hearings would involve little risk of widespread dissemination of inadmissible evidence prior to trial.
Even when a case has attracted public attention, public attendance at a pretrial competency hearing would not ordinarily generate the type of adverse pretrial publicity which could impair the defendant’s right to a fair trial. The purpose of such a hearing is simply to determine whether the accused is mentally competent to stand trial (see, e.g., Pitler, New York Criminal Practice Under the CPL, pp 330-334). The inquiry narrowly focuses on the defendant’s present mental capacity to understand the proceedings against him and to assist in his own defense (CPL 730.10, subd 1). The " 'test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding— and whether he has a rational as well as factual understanding of the proceedings against him’ ” (Dusky v United States, 362 US 402; Denzer, Practice Commentary, McKinney’s Cons *441 Laws of NY, Book 11 A, CPL 730.10, p 332; People v Francabandera, 33 NY2d 429, 436).
This, of course, is not the same question that the jury may be called upon to decide if the defendant raises an insanity defense at trial. At the hearing the defendant’s present mental capacity is in issue; while at the trial it is the defendant’s mental state at the time of the crime which controls. More important, a completely different standard applies (see Penal Law, § 30.05, subd 1). "Determinations of incompetency to stand trial, lack of criminal responsibility because of mental disease or defect, and mental illness for purposes of civil commitment are independent concepts” (Pitler, op. cit., p 330).
Evidence relevant and admissible to establish the defendant’s capacity to understand the legal proceedings and to assist his attorney would ordinarily reveal little or nothing about his possible guilt of the crimes charged. Nor is it foreseeable that public disclosure of the proof would frustrate the purpose of such a hearing. Thus even in a case which has received some publicity the court cannot assume that public attendance at a competency hearing will necessarily jeopardize the defendant’s right to a fair trial. If there is, in fact, such a risk in a particular case, the defendant has the burden of establishing it.
Similarly the fact that the defendant may be charged with sexual offenses does not mean that the hearing should automatically be closed to the public. It is true, of course, that section 4 of the Judiciary Law grants the public the right to attend all court proceedings "except that in all proceedings and trials in cases for divorce, seduction, abortion, rape, assault with intent to commit rape, sodomy, bastardy or filiation, the court may, in its discretion, exclude therefrom all persons who are not directly interested therein.” The exception, however, must be narrowly construed (People v Jelke, 308 NY 56, 65, supra). It applies only when there will be testimony concerning the details of the specific acts mentioned in the statute and then only when the commission of one or more of the specified acts is the issue to be decided (People v Jelke, supra, at pp 64-65). The purpose of the exception is to grant the Judge the "power to refuse to turn his courtroom into a peep show” (United Press Assns. v Valente, 308 NY 71, 87, supra [Desmond, J., concurring]). It is not aimed at shielding the public from testimony of all mental disorders which may have a sexual basis. Surely the details of the sexual acts, *442 which were considered offensive, are not likely to be relevant in determining the defendant’s present ability to understand the proceedings and assist counsel at the trial. Here, too, the defendant must show that evidence relevant and admissible at the hearing would come within the statutory exception.
Initially the motion to exclude the public from the pretrial proceeding must be made on the record, in open court. In support of the motion the defendant must demonstrate to the court a strong likelihood that evidence relevant and admissible at this particular hearing in this case would prejudice the defendant’s trial if it were disclosed to potential jurors or would involve sordid matters expressly covered by section 4 of the Judiciary Law. If, during the course of the argument, it becomes necessary for counsel to introduce or tender specified items of proof, the public disclosure of which would create the very prejudice sought to be avoided or would itself involve disclosure of such sordid matters, defense counsel may further request that this portion of the argument be continued in camera, in the presence of counsel for the defendant and the prosecutor but out of the hearing of the public. In any event, all proceedings on the motion, whether in open court or in camera, should be recorded for appellate review.
Should the court decide that it is necessary to close the hearing in order to protect the defendant’s rights or pursuant to section 4 of the Judiciary Law, the reasons for closure shall be given in open court. The court, of course, shall be cautious in this pronouncement lest the expressed reasons create the prejudice or the disclosure sought to be avoided.
Although that procedure was properly followed in this case, the defendant failed to show sufficient basis for the ruling requested. There was no showing that there would be testimony describing the sexual acts specified in the statute (Judiciary Law, § 4). Nor was there any showing of need for the court to exercise its inherent power to exclude the public from the hearing.
Proof that the defendant may have a mental defect is not generally considered evidence of guilt, and, in fact, is often asserted by the defendant to avoid or mitigate criminal responsibility (see, e.g., Penal Law, §§ 30.05, 125.20, subd 2). And, as indicated, in this case the defendant had served notice that he intended to do so at the trial. Of course he may later choose not to make his mental condition an issue at the trial. *443 But when he has given the notice, and later requests a competency examination, which was the subject of several newspaper accounts, it is too late for the defendant to claim that the hearing should be closed to the public in order to prevent disclosure of the fact that he may have a mental problem — even assuming that type of pretrial publicity could be said to jeopardize his right to a fair trial. He may have a legitimate interest in preventing public disclosure of certain details of his mental condition and the basis for the expert opinion (see, e.g., Pitler, op. tit., pp 337-339), but that would justify excluding the public only from as much of the hearing as covered those points and not from the entire hearing (cf. People v Jelke, supra, at p 64), as was done in this case. In sum, there was no sufficient basis to deny the public the right to attend the proceeding, as they are entitled to do by statute (Judiciary Law, § 4).
In light of this disposition, it is unnecessary to consider the petitioner’s alternative arguments that its right of access to court proceedings is guaranteed by the First Amendment and the similar provisions of the State Constitution. We would note, however, that this is not an open question in this State. In United Press Assns. v Valente (308 NY 71, 77, 87, supra) all members of the court, although divided on other points, unanimously held that the public and the press had no constitutional right of access to court proceedings under either the First Amendment or the similar provision in the State Constitution (art I, § 8). Later in Matter of Oliver v Postel (30 NY2d 171, 179, supra) we declined to reconsider that position because, as here, it was unnecessary to do so. The Supreme Court decisions do not require a contrary result. Indeed in the most recent case to pose the issue the Supreme Court expressly refused to decide it (Gannett Co. v De Pasquale, 443 US 368, 99 S Ct 2898, 2912, supra).
It should be emphasized however, in response to the concurring opinions, that any right of access to court proceedings accorded to the public and the press must also take into account the equally important rights of the accused (see, e.g., Meyer, The Most Fundamental of All Freedoms, 2 Crim Law Bull, No. 3, p 26; Meyer, Justice and the News Media: A Reply And A Challenge, 3 Trial, No. 2, p 38; Meyer, News Reporting and Fair Trial, 22 Okla L Rev 135). Complete freedom to speak and publish at will is, of course, the ideal and essential limitations on that freedom should be few and carefully *444 scrutinized. But the true measure of our society will not be judged by the freedom we grant to our great institutions as much as by the protection we provide for society’s lowliest member. And none are more lowly — none more subject to potential abuse — and none with more at stake than those who have been indicted and face criminal prosecution in our courts. For them, freedom and fair trial are not abstractions.
Thus recognition of a public right of access to court proceedings does not mean that the defendant’s right to a fair trial assumes a secondary role. Even if the public’s right were founded on the First Amendment, it could not serve to diminish the rights of the accused, for the primary purpose of the Bill of Rights and the corresponding provisions of the State Constitution is to insure the individual, particularly the unpopular individual, a measure of protection against oppression by a majority. Nor should the defendant’s right to a fair trial be contingent on the surrender of other rights guaranteed to the accused, as the concurring opinions would require. The defendant should not be placed in a position where he will have to submit to a continuance at the expense of his right to a speedy trial, or to a change of venue which would require a waiver of his fundamental right to a trial in the vicinage by a jury of his peers (cf. People v Taylor, 39 NY2d 649; People v Goldswer, 39 NY2d 656). The suggestion that sequestration may serve as an alternative to closure is impractical when a pretrial proceeding is involved. Generally at that stage there are no jurors to sequester and to delay the hearing until the jury has been, or is about to be drawn, would deprive the accused, and often the prosecutor, of the benefit of a pretrial ruling — that is, advance warning and time to prepare for trial on matters essential to the case.
On the other hand, it should not be assumed that the public interest which reporting fosters cannot be preserved by making the transcript available to the media as soon as the danger of prejudice to the defendant has passed (see Matter of Gannett Co. v De Pasquale, 43 NY2d 370, 381, supra). Thus in those rare cases where there is a risk that public attendance at all or part of a pretrial hearing will jeopardize the defendant’s right to a fair trial in the community, delaying the release of the prejudicial information would more closely conform to the Bill of Rights than would the alternatives proposed by the concurring opinions.
Accordingly, the judgment of the Appellate Division should *445 be reversed and the petition granted to the extent of directing the release of the transcripts of the competency hearing.

. It appears that Verrone was found competent to stand trial and subsequently pleaded guilty to the indictment and was sentenced to a term of imprisonment. We have also been informed that he has taken an appeal from the sentence and the finding of competency and that the appeal is still pending in the Appellate Division.

. [3] Although appellant claims a right of appeal to our court on constitutional grounds, the determination below did not necessarily reach the constitutional issue and thus the appeal must be dismissed. However, in view of the importance of the issue as noted above, we have, on motion of the appellant, granted leave to appeal.