OPINION OF THE COURT
Wachtler, J.
The petitioners in this article 78 proceeding are the publisher of the Albany Times-Union, a daily newspaper, and Shirley Armstrong, a reporter for that newspaper. The respondent, John J. Clyne, is a Judge of the Albany County Court.
In March of 1979 Judge Clyne was conducting a joint suppression hearing in the criminal case of Alexander Marathon and William Du Bray, who had been indicted for the crimes of robbery in the first degree, burglary in the first degree and grand larceny in the second degree. The hearings were closed to the public and press on the motion of the defendants, without objection by the prosecutor and without a hearing. Armstrong, the court reporter for the Times-Union, knew the hearings were closed and the courtroom doors locked, but was sufficiently interested in the proceedings to periodically walk by the courtroom to observe whatever she could.
On March 7, during one of these periodic observations, Armstrong noticed the attorney for Du Bray, one of the codefendants, standing outside the courtroom door. On the assumption that something other than a suppression hearing was in progess Armstrong tried the courtroom door but found it locked. She then learned from Du Bray’s attorney that Judge Clyne, behind closed doors, had heard and granted a motion to close a proceeding during which Marathon was expected to enter a plea. The reporter, Armstrong, then knocked on the courtroom door. There was no response. After about 15 minutes the doors opened and she learned from Judge Clyne that Marathon had indeed entered a guilty plea. *713 The Judge, however, refused petitioners’ request for a transcript of the plea proceeding or to direct the court stenographer to read back the minutes of the proceeding.
On March 12, prior to trial, the other defendant, Du Bray, also entered a plea of guilty before Judge Clyne. Thereafter Judge Clyne permitted the petitioners to obtain a copy of the transcript of the closed plea proceeding; that transcript has now been furnished to them and forms a part of the record on this appeal.
The transcript of the closed proceeding.held March 7, which is the sole concern of this appeal, indicates that at the very commencement of the already closed suppression hearing which had been adjourned from March 5, Marathon’s attorney orally moved to close the courtroom to all persons except Marathon, his attorney, and court personnel. The District Attorney joined the motion. Without taking evidence or hearing argument from anyone Judge Clyne immediately granted the motion, even excluding the codefendant Du Bray and his attorney from the courtroom, and had the doors secured. In sworn testimony Marathon then confessed his own participation in the crime for which he was indicted, inculpated his codefendant Du Bray, and was permitted to enter a plea of guilty to one count of the indictment.
The petitioners brought this proceeding seeking a declaration that the closure of the plea taking was illegal, and for an injunction prohibiting such closures in the future unless members of the press are afforded an opportunity to be heard.
The Appellate Division concluded that the closure was a proper exercise of the trial court’s discretion and dismissed the petition. Petitioners appealed. We conclude that the case is moot and that there is no sufficient reason for this court to consider the merits of the appeal; however, for the reasons which follow, the order of the Appellate Division should be reversed and remitted for dismissal.
It is a fundamental principle of our jurisprudence that the power of a court to declare the law only arises out of, and is limited to, determining the rights of persons which are actually controverted in a particular case pending before the tribunal (Matter of State Ind. Comm., 224 NY 13, 16; California v San Pablo & Tulare R. R, 149 US 308, 314-315). This principle, which forbids courts to pass on academic, hypothetical, moot, or otherwise abstract questions, is founded both in constitutional separation-of-powers doctrine, and in methodo *714 logical strictures which inhere in the decisional process of a common-law judiciary.
Our particular concern on this appeal is with that facet of the principle which ordinarily precludes courts from considering questions which, although once live, have become moot by passage of time or change in circumstances. In general an appeal will be considered moot unless the rights of the parties will be directly affected by the determination of the appeal and the interest of the parties is an immediate consequence of the judgment. On the facts of the instant case, where the underlying plea proceeding had been long concluded and the transcript had been furnished to the petitioners at the time this action was commenced (cf. Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 436) we conclude that the rights of the parties cannot be affected by the determination of this appeal and it is therefore moot. Because we conclude that the appeal is moot it may not properly be decided by this court unless it is found to be within the exception to the doctrine which permits the courts to preserve for review important and recurring issues which, by virtue of their relatively brief existence, would be rendered otherwise nonreviewable (see Roe v Wade, 410 US 113, 125).
In this court the exception to the doctrine of mootness has been subject over the years to a variety of formulations.[1] However, examination of the cases in which our court has found an exception to the doctrine discloses three common factors: (1) a likelihood of repetition, either between the *715 parties or among other members of the public; (2) a phenomenon typically evading review; and (3) a showing of significant or important questions not previously passed on, i.e., substantial and novel issues. After careful review we are persuaded that the case before us presents no questions the fundamental underlying principles of which have not already been declared by this court, and that this case is, therefore; not of the class that should be preserved as an exception to the mootness doctrine.
We acknowledge, as we have before, the very substantial character of the interests represented by the petitioners in this proceeding. We also note that questions such as the one posed may occasionally escape review. It is for this reason that on occasion we have entertained appeals even though the issues in the particular controversy have been resolved. However, as our court only recently has set forth in some detail the requirements that must be fulfilled before a judicial proceeding in this State may be closed to the public and press, no sufficiently useful purpose would be served in this instance by our retaining the appeal notwithstanding that the underlying controversy is now moot.
It has, of course, long been the law in this State that all judicial proceedings, both civil and criminal, are presumptively open to the public (Judiciary Law, § 4; Lee v Brooklyn Union Pub. Co., 209 NY 245) and that a proceeding at which a criminal defendant enters a plea of guilty is indisputedly a substitute for a trial (People ex rel. Carr v Martin, 286 NY 27, 32). Indeed, in Matter of Gannett Co. v De Pasquale (43 NY2d 370) it was only by distinguishing the pretrial and evidentiary nature of the proceeding at issue that this court could conclude that such a proceeding should ordinarily be closed to the public and press (Gannett, supra, at p 380). We were careful to note in Gannett (at p 378) that, "In the case now before us, the Trial Judge was not presiding over a trial on the merits”.
In Matter of Westchester Rockland Newspapers v Leggett, (48 NY2d 430, supra), which was decided by this court after the decision of the Appellate Division in the instant case and which was obviously not available to inform either the trial or the appellate court, the issue was closure of a pretrial competency hearing. In that case even the pretrial nature of the proceeding was considered insufficient to nullify the presumption that all judicial proceedings are to be open. Thus the dissent is flatly incorrect in its statement that by dismissing *716 this appeal for mootness we are disposed to permit trials to be closed to the public on the same basis as pretrial proceedings. On the contrary, we have distinguished between pretrial and trial closures and expressed our consciousness of the danger inherent in permitting too casual a closure of even pretrial proceedings: "At the present time, in fact in most criminal cases, there are only pretrial proceedings. Thus if the public is routinely excluded from all proceedings prior to trial, most of the work of the criminal courts will be done behind closed doors” (Matter of Westchester Rockland Newspapers v Leggett, supra, at p 440).
Our decisions in Gannett (supra) and Leggett (supra) laid down the procedural framework within which the possibility of closure must be considered.[2] We conclude, therefore, that inasmuch as the principles governing fair trial-free press issues which might have been developed by consideration of the instant case have already been largely declared by our decisions in Gannett and Leggett, in this instance there is no sufficient reason to depart from the normal jurisprudential principle which calls for judicial restraint when the particular controversy has become moot.
More than that, we are convinced that there is a good reason in the circumstances of this case not to entertain this appeal for the purpose of extrapolating or refining the principles which we have declared. The closing of the plea hearing here occurred while the appeal from our Gannett decision was pending before the United States Supreme Court and some months before our decision in the Leggett case.[3] We cannot conclude that the trial court would have followed the procedures which he did or that he would necessarily have reached the same conclusion had our decision in Leggett preceded the hearing. While we can anticipate that the implementation of the principles that we have declared will not always be easy, we have no reason to question the readiness or capacity of the *717 Judges at nisi prius to seek to implement them appropriately with diligence, faithfulness and imagination. We conceive our jurisprudential role in this field as one of supervising and monitoring the dispositions made by our lower courts after we declare the applicable principles, rather than retrospectively appraising conduct of Trial Judges that preceded our declarations.
Other considerations also support our conclusion that this appeal should not be entertained. We are concerned with the vitality and fundamental soundness of our jurisprudence.
The engine of the common law is inductive reasoning. It proceeds from the particular to the general. It is an experimental method which builds its rules in tiny increments, case-by-case. It is cautious advance always a step at a time. The essence of its method is the continual testing and retesting of its principles in "those great laboratories of the law, the courts of justice” (Smith, Jurisprudence, p 21).[4]
Conscious judicial restraint is essential — its absence diminishes the craftsmanship of the courts and debases the judicial product. A common-law Judge will not reach to decide a question not properly before him. Nor will he attempt to state a broad rule except when absolutely required — and then it will be cast in terms which permit it to be moulded in light of the experience of those who must work with it. A newly articulated rule should not be immediately recast "for the attempt to do absolute justice in every single case would make the development and maintenance of general rules impossible” (Smith, Jurisprudence, p 21).
Finally, it must be explicitly stated that in dismissing the present appeal as moot we express no view on the merits. Our disposition here is not to be read as any withdrawal from, addition to, or elaboration on our opinions in Gannett and Leggett. It is entirely incorrect to suggest otherwise. Nor should our dismissal be interpreted as presaging a disposition to decline on grounds of mootness to entertain appeals in future fair-trial, free-press cases. We recognize, of course, that cases in this area of the law, because of considerations of timing, would often, even usually, evade review if appeals were uniformly to be dismissed for mootness. We shall con *718 tinue to resolve each case in this field on the basis of its individual characteristics and merits, only one aspect of which will be its mootness, if moot it is.
Concluding as we do that the appeal is moot and not of a character which should be preserved for review, the appeal should be dismissed. In this case, however, because the Appellate Division had no opportunity to consider the matter in light of our decision in Leggett (supra) we should reverse and remit with directions to dismiss solely on the ground of mootness, in order to prevent a judgment which is unreviewable for mootness from spawning any legal consequences or precedent (see Matter of Adirondack League Club v Board of Black Riv. Regulating Dist., 301 NY 219, 223; cf. United States v Munsingwear, 340 US 36, 39; United States v Alaska S. S. Co., 253 US 113,115).

. "[N]ovel and important question of statutory construction” (Le Drugstore Etat Unis v New York State Bd. of Pharmacy, 33 NY2d 298, 301); "of a character which is likely to recur not only with respect to the parties before the court but with respect to others as well” (East Meadow Community Concerts Assn. v Board of Educ., 18 NY2d 129, 135); "only exceptional cases, where the urgency of establishing a rule of future conduct is imperative and manifest will justify a departure from our general practice” (Matter of Lyon Co. v Morris, 261 NY 497, 499); question of "importance and interest and because of the likeliness that they will recur” (Matter of Jones v Berman, 37 NY2d 42, 57); "question -of general interest and substantial public importance is likely to recur” (People ex rel. Guggenheim v Mucci, 32 NY2d 307, 310); question "of major importance and [that] will arise again and again” (Matter of Rosenbluth v Finkelstein, 300 NY 402, 404); questions of "general interest, substantial public importance and likely to arise with frequency” (Matter of Gold v Lomenzo, 29 NY2d 468, 476); "importance of the question involved, the possibility of recurrence, and the fact -that orders of this nature quickly expire and thus typically evade review” (Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 437); "crystalizes a recurring and delicate issue of concrete significance” (Matter of Gannett Co. v De Pasquale, 43 NY2d 370, 376).

. In Gannett we stated that in determining the propriety of closure in a particular case the court "should of course afford interested members of the news media an opportunity to be heard, not in the context of a full evidentiary hearing, but in a preliminary proceeding adequate to determine the magnitude of any genuine public interest” (43 NY2d 370, 381). That precatory language in Gannett was the foundation for the mandate of Leggett (supra, at p 442) which spelled out in as much detail as a common-law court may, the procedure to be followed by a trial court which is confronted with a request for closure of a criminal proceeding.

. We also note that the appeal in Richmond Newspapers v Virginia (448 US —, 48 USLW 3241) is now pending before the Supreme Court.

. (Cf. Cardozo, The Nature of the Judicial Process, p 25: "This work of modification is gradual. It goes on inch by inch. Its effects must be measured by decades and even centuries. Thus measured, they are seem to have behind them the power and pressure of the moving glacier.”)