Meyer, J.
(concurring). I concur fully in Judge Wachtler’s opinion and write only because where the dissent finds implications in that opinion which "do not bode well for the future of public trials in this State” (p 723), I find in the dissent suggestions which, if they become the governing rule, may adversely affect the individual’s right to a fair trial.
I, of course, do not suggest that the media are to be regularly, or even often, excluded from the courtroom. What I am urging is that the problem must be analyzed not in terms of categories and classifications but of the rights affected, and that, without a very much clearer demonstration that the public’s interest cannot be reasonably protected without infringing individual rights than has been made, the rights of the individual on trial may not be subordinated to the rights of the public to know what goes on in a courtroom or how the system of justice is functioning.
The genius of the American constitutional experiment has been the protections it affords individuals against oppression by the majority, whether in the form of star chamber proceedings or of stadium trials, the result of either of which is an equally foregone conclusion. Important as it is that justice appear to the public to be done, in final analysis the public is grossly disserved if it not in fact be done in each individual case.
Resolution of the instant case, were it to be decided on the merits, would turn not on whether the taking of a guilty plea is the equivalent of a trial or more nearly a preliminary *719 proceeding, or whether the fair trial rights at stake were those of the pleading defendant or his codefendant. The fact is, as both we and the United States Supreme Court have recognized, that there are occasions when parts of trials, as well as of pretrial proceedings, may constitutionally be closed (Gannett Co. v De Pasquale, 443 US 368, 388, n 19, and cases cited; People v Jones, 47 NY2d 409; Matter of Gannett Co. v De Pasquale, 43 NY2d 370, 377-378, affd 443 US 368), though as we have made clear the discretion to do so is to be "sparingly exercised and then, only when unusual circumstances necessitate it” (People v Hinton, 31 NY2d 71, 76; accord: Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 441). Closure during trial, moreover, will usually be to protect some interest of a third person or the public, rather than of the person on trial[1] (to protect the public interest in not revealing the identity of an informer, People v Jones, supra; People v Hinton, supra; see Proposed Code of Evidence for the State of New York, § 510; to protect the life of a witness or shield him or her from embarrassment, People v Hagan, 24 NY2d 395, cert den 396 US 886; People v Smallwood, 31 NY2d 750; United States ex rel. Smallwood v La Valle, 377 F Supp 1148, affd 508 F2d 837, cert den 421 US 920; see Judiciary Law, § 4; to protect the interests of the defendant and the public in orderly trial, United States ex rel. Orlando v Fay, 350 F2d 967).
Nor can I accept the dissent’s assumption that there is an "absence of prejudice” to codefendant Du Bray in permitting Marathon’s guilty plea to be taken in open court. Short of publishing a confession by Du Bray before it has been ruled admissible, nothing could be more devastating to his rights than Marathon’s accusatory words. Given in a plea proceeding, such words are usually the quid pro quo for some favor of the law, generally a lesser sentence. To permit such information to get to potential jurors without the prophylaxis of cross-examination pointedly indicating the self-serving nature of the accusation is materially to disadvantage such a codefendant, for cross-examination when it does occur will be less effective than it would have been had the accusation not come to the jury in advance of trial and with the imprimatur of the press. *720 It is possible to disadvantage such a codefendant in an additional way which cannot be known before trial. It is not unknown for a person in Marathon’s position to recant when called to testify at his codefendant’s trial. In such a case his statement about the codefendant at his own guilty plea "may be received only for the purpose of impeaching” him "and does not constitute evidence in chief’ (GPL 60.35, subd 2). While the Trial Judge must so instruct the jury (id.), such an instruction, of questionable psychological value in any event,[2] will be even less effective than usual because the accusation came to the jury in advance of trial and with the imprimatur of the press.
The problem that arises when the issue is discussed in terms of categories rather than effect on individual rights is well illustrated by the present case. The dissent sees the closure here involved as casting "a veil of secrecy over the major component of the criminal justice system” (p 728) and the fact that the pleading defendant might implicate his codefendant as insufficient justification for closure (p 727). In my view there is a ready means of protecting the public’s interest in the Marathon-Du Bray trials without sacrificing Du Bray’s clear right not to have the jury pool for his trial, scheduled to begin a few days later, tainted by media accounts of Marathon’s plea statements implicating him, and the number of plea proceedings in which, to protect the rights of a codefendant, closure of part or all of the plea proceeding might occur is an insignificiant part of the criminal justice system. So far as the record and briefs reveal (including the brief of amici which catalogues a number of recent closures) this is the first such case.
The tension between public and individual interests that arises over an issue such as whether by closing so much of a plea proceeding as relates to him a codefendant should be protected against revelation in advance of his trial of the pleading defendant’s accusations against him, arises not because of the presence of media representatives in the courtroom, but because it is a constitutional absolute that what transpires in open court is public property and may be imme *721 diately disseminated. Responsible media often will delay publication nonethless,[3] but quite properly are unwilling to permit the invasion of First Amendment rights that would be involved in permitting the courts to tell them when they can publish. Yet, just as not all Judges are exemplars of their craft, neither are all editors able to perceive in their highly competitive profession the value to individual rights of delaying publication. The antidote for the nonexemplary Judge is to keep courtrooms open to the fullest extent consistent with individual rights. The antidote for the unresponsive or irresponsible editor is to close the courtroom when there is a real probability that publication of what is to be revealed in the courtroom will materially prejudice the defendant on trial, because in no other constitutionally acceptable way can his rights be protected.
I, of course, do not ignore the existence of procedures such as change of venue, change of venire, continuance, waiver of jury, sequestration, some of which are discussed by the Supreme Court in Nebraska Press Assn. v Stuart (427 US 539, 563), as alternatives to prior restraint. But I cannot accept the concept that these possibilities, most of which[4] involve denigration of defendant’s constitutional protections are acceptable alternatives (cf. Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 444, supra; Matter of Gannett Co. v De Pasquale, 43 NY2d 370, 380, affd 443 US 368, supra).
In my view the Bills of Rights set forth in article I of the New York State Constitution and the first 10 amendments to the United States Constitution become a mockery when, because of publicity, a court must say to a man on trial for his life or for his liberty, you are entitled to a speedy trial, but not yet. You are entitled to trial by a jury, unless you fear, that pretrial publicity has so adversely affected the impartiality of those who will be called as potential jurors that you *722 dare not risk the result. You are entitled to a trial by a jury of your neighbors, but not those nearby. You are entitled to confront and cross-examine witnesses, but not those whose testimony is given through the newspapers. You are entitled to exclude improperly seized matter from the jury as evidence, but not as a news story. The more is this so when what we deal with is not prior restraint on publication as in Stuart, but denial of access for a limited time as to a limited part of the proceeding, and when we impose upon the defendant seeking closure not only the burden of showing that such procedures will not "dispel prejudice”, but also what impact the prejudicial information will have on the jury pool, in light of its size, the extent of the media coverage and the effect of that coverage on the public at large (see Matter of Westchester Rockland Newspapers v Leggett, supra, at p 447 [Cooke, Ch. J., concurring]). Bearing in mind that "none are more lowly— none more subject to potential abuse — and none with more at stake than those who have been indicted and face criminal prosecution in our courts” (ibid., at p 444 [Wachtler, J., majority opn]), I conclude that the required showing presses to the outer limits of, if it does not exceed, due process requirements for all but the wealthy defendant.
Delayed access does not affect the rights of the public or of the media in any similar way. As suggested in Gannett (43 NY2d, at p 381) and ordered in Westchester Rockland Newspapers (48 NY2d, at p 445), a full transcript of the plea proceeding in this matter was made and was furnished to appellant as soon as the danger to Du Bray’s interest was past. Perhaps consideration should be given to (1) equipping one courtroom in each courthouse with videotape equipment so that any closed portion of a trial or pretrial proceeding can be recorded in a way that will make available to the media with all the nuances of voice and gesture exactly what transpired while the courtroom was closed, (2) requiring that any closed proceeding be held in that courtroom and videotaped in its entirety, (3) putting the operation of the videotape equipment and the retention of the tapes in the hands of a public commission independent of the courts or other members of the criminal justice system and subject to court order only as to time of release, which would, in any event, be required to be not later than a few days after the trial of defendant or a codefendant ends (cf. Uniform Rules of Criminal Procedure, rule 714, 10 ULA 317). Though no objective evidence of which *723 I am aware indicates the need for the procedure suggested, I recognize the importance of assuring our citizens that the judicial process is above suspicion, and believe any resulting inconvenience to the system to be more than offset if we thereby assure the constitutional rights of individuals accused.
Use of the suggested procedure together with the preliminary hearing mandated by the Gannett and Westchester Rockland Newspapers cases will preserve both the rights of the public (and the media in the interest of the public) to the free flow of information about the courts and the "most fundamental of all freedoms,”[5] the right of an accused individual to a fair trial.

. Hearings preliminary in nature (e.g., suppression) are sometimes permitted during trial. For purposes of present discussion they should be classed as preliminary, but as indicated in the text the difference is not determinative. What is determinative is the effect on individual rights of what will be revealed.

. For Mr. Justice Jackson that such an instruction could overcome the prejudice involved was a "naive assumption” which "all practicing lawyers know to be unmitigated fiction” (Krulewitch v United States, 336 US 440, 453 [concurring opn]; see, also, Bruton v United States, 391 US 123, 128-136; Jackson v Denno, 378 US 368, 388; Kalven & Zeisel, American Jury, p 128).

. That effective news reporting is possible notwithstanding delay is clear from the New York Times’ handling of the Franzese case (United States v Franzese, 392 F2d 954, vacated in part and remanded sub nom. Giordano v United States, 394 US 310). In that case the Times honored the Trial Judge’s request and withheld until conclusion of the trial reporting on what occurred in the courtroom out of the presence of the jury. It then printed a roundup story concerning the trial, including the material earlier withheld (New York Times, March 4,1967, p 28, cols 4-8).

. Sequestration is the exception, but it involves a potential of jury resentment at being locked up for the duration of the trial which makes it likewise unacceptable as an alternative (cf. Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 444, supra).

. (Estes v Texas, 381 US 532, 540: "We have always held that the atmosphere essential to the preservation of a fair trial — the most fundamental of all freedoms— must be maintained at all costs.”)