Chief Judge Cooke
(dissenting). A majority of the court today in effect sanctions the exclusion of the public and the press from a guilty plea proceeding in a criminal case. Because closure of a plea proceeding is tantamount to closure of a trial itself, and because the tacit implications of the court’s decision do not bode well for the future of public trials in this State, I must respectfully dissent.* [1]
The present article 78 proceeding stems from a criminal proceeding in Albany County. In September of 1978, Alexander Marathon and William Du Bray were indicted for the crimes of robbery in the first degree, burglary in the first degree and grand larceny in the second degree. Although the case did attract media attention, the publicity does not appear to have been substantial. Nonetheless, when a joint suppression hearing was convened on March 5, 1979, defendants moved for exclusion of the public. The court granted the motion, without objection by the prosecutor, and without conducting a hearing, and ordered the doors to the courtroom locked.
During the course of the closed suppression hearing, defendant Marathon decided to enter a guilty plea. While the courtroom was still locked, and the public and reporters barred, Marathon’s counsel moved to close the courtroom during the plea proceeding. The District Attorney joined in the motion, and the Judge again ordered closure, stating only *724 that "In the exercise of discretion and in the interests of justice, I will close the courtroom at this time to all non-Court personnel”. Later the court explained that it closed the plea proceeding because it was likely that Marathon would implicate Du Bray, rendering it difficult to select an impartial jury when Du Bray came to trial.
Petitioner Armstrong, a reporter for the Albany Times-Union, was aware of the closed suppression hearing, and allegedly made periodic checks of the courtroom where she believed the hearing was being conducted. She first learned of the closed plea proceeding from the attorney for Du Bray, who was excluded from the proceeding and was standing outside the courtroom.
Ms. Armstrong visited the Judge in his chambers, and he confirmed that a guilty plea had been entered. The Judge indicated that a transcript of the proceeding would be available in a few days, but denied Ms. Armstrong’s request to have the stenographer read the minutes to her. The next day, petitioners delivered a letter to the Judge protesting the closure and requested either an immediate transcript or an order directing the court reporter to relate the minutes of the proceeding. This request was denied.
On the following Monday, Du Bray entered a plea of guilty. Ms. Armstrong was then permitted to purchase a copy of the minutes taken at Marathon’s plea. Shortly thereafter, this proceeding was instituted.
At the outset, I cannot agree that the proceeding should be dismissed for mootness. As the court has but recently reaffirmed regarding closure orders, "we have traditionally retained jurisdiction, despite a claim of mootness, because of the importance of the question involved, the possibility of recurrence, and the fact that orders of this nature quickly expire and thus typically evade review” (Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 436-437). By now rejecting this exception to the mootness doctrine, the majority has provided a precedent to effectively insulate closure orders from legal challenge. Indeed, since we have previously cautioned trial courts against staying the criminal proceeding while collateral review of a closure order proceeds (Matter of Merola v Bell, 47 NY2d 985, 987-988), the closure order will be moot and evade review in all but the rarest of instances.
No persuasive reason has been given for now overruling the *725 mootness exception for closure orders so recently recited and recognized in Matter of Gannett Co. v De Pasquale (43 NY2d 370, affd 443 US 368) and Westchester Rockland[2] Indeed, the majority furnishes no explanation whatsoever as to why the mootness exception applied in those cases falls short of reaching the situation in this matter, but notes somewhat cryptically that future cases may or may not be moot. Perhaps more unsettling is the absence of guidelines by which to evaluate mootness in these proceedings. If the court is unwilling to apply the mootness exception here, where a novel and not insubstantial issue is presented, it is difficult to predict when the exception will again be invoked. Such ad hoc, unexplained decision making is not in harmony with the best interests of our system of jurisprudence.
Nor do I agree that the "principles governing fair trial-free press issues * * * have already been largely declared by our decisions in Gannett” (majority opn, at p 716) and in Westchester Rockland Newspapers v Leggett (supra, at pp 439-442). Undoubtedly, Westchester Rockland and Gannett establish the procedural and substantive rules to be followed when dealing with a motion to close pretrial proceedings. Those guidelines do not cover the situation here, as a guilty plea proceeding is simply not pretrial in nature. Rather, it is a substitute for and the legal and practical equivalent of the trial itself. A plea of guilty establishes "guilt of the crime charged as incontrovertibly as a verdict of a jury upon a trial” (People ex rel. Carr v Martin, 286 NY 27; see, e.g., People v Krennen, 264 NY 108, 109; People ex rel. Hubert v Kaiser, 206 NY 46, 53). The plea is in itself a conviction (e.g., People v Jones, 44 NY2d 76, 82-83, citing Boykin v Alabama, 359 US 238). "Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence” (Kercheval v United States, 274 US 220, 223). Thus, *726 by stating that Westchester Rockland and Gannett are controlling, the court is effectively holding that trials may be closed to the public on the same basis as pretrial proceedings.
And the court may not sidestep this significant issue by merely asserting that Westchester Rockland recognized a distinction between trial and pretrial proceedings, for the fact remains that Westchester Rockland articulated substantive standards for only pretrial proceedings. Today’s decision must be construed as indorsing the application of those same standards to trial closures, and thereby sustaining the constitutionality of excluding the public and press from a trial itself. The fallacy in this holding is demonstrated by the Supreme Court’s retention of jurisdiction — at least for the present — in a case where the trial was closed to the public (Richmond Newspapers v Virginia, 448 US —, 48 USLW 3241). That action signals a strong possibility that the closing of a trial presents a substantial Federal constitutional question, even after Gannett upheld pretrial closure. It is thus difficult to fathom the majority’s efforts to avoid a question with such momentous constitutional and societal impact.[3]
This is especially disturbing because the rationale for excluding the public from pretrial proceedings does not justify closure of plea hearings.[4] This court has a number of times reviewed the serious conflict which gave rise to the pretrial closure controversy. On the one hand, the public is possessed of a right to open judicial proceedings.[5] Not only is this right deeply rooted in our history (Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 445, supra [concurring opn]), but it is mandated by the clear long-standing command of the Legislature: "[t]he sittings of every court within this state shall be public, and every citizen may freely attend the *727 same” (Judiciary Law, § 4). At the same time, there are instances, however rare, where pretrial publicity may effectively destroy the accused’s right to a fair trial (see Sheppard v Maxwell, 384 US 333). The precise point at which the public right to know must give way to the defendant’s right to a fair trial has and will continue to spark lively debate (compare Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 443-444, with id., at pp 445-448, supra).
But we can all agree as to the possible source of the potential prejudice at pretrial suppression hearings. Because the very purpose of such proceedings is to determine the admissibility of evidence, they "are often a potent source for the revelation of evidence which is both highly prejudicial to the defendant’s case and not properly admissible at trial” (Matter of Westchester Rockland Newspapers v Leggett, supra, at p 439). If the hearing is open, and the case is well publicized, it is possible that the evidence will be disclosed to potential jurors but ultimately excluded from use at trial. This could subvert the very purpose of the hearing.
By contrast, none of these possible dangers attend when the plea proceeding is opened to public view. Given a defendant’s voluntary decision to admit his guilt in open court, and the fact that the plea proceeding will quickly ripen into a conviction, the possibility of a defendant’s rights being impaired by the presence of the public and the press is almost nonexistent. And, even if it be assumed that concern for a codefendant’s rights would ever warrant closure of a plea, the mere fact that the pleading defendant might implicate his cohort is insufficient justification. It is true, of course, that the defendant’s statements at the plea, if they implicate the codefendant, would be prejudicial. But all evidence which suggests guilt is highly prejudicial. This does not mean that all inculpatory evidence must be enjoined from pretrial disclosure. The narrow rationale for considering closure of the suppression hearing is that the damaging evidence may prove to be inadmissible at trial. There is no reason to suppose that the evidence uncovered at a plea hearing would be inadmissible at the later trial of a codefendant. Indeed, more often than not, the defendant who pleaded can probably be expected to testify at the codefendant’s trial — possibly for the prosecution, possibly for the defense. It follows that there is no ipso facto basis for overriding the command of section 4 of the Judiciary Law with respect to plea proceedings.
*728 In addition to the absence of prejudice, the public has a compelling stake in open plea proceedings. "Publicity, not secrecy, in arraignment, plea and judgment is part of our tradition” (Matter of Rudd v Hazard, 266 NY 302, 307). Especially in modern times, when guilty pleas account for most criminal dispositions, it is particularly egregious to close the courtroom doors on these, proceedings. In some areas of the State, guilty pleas make up three fourths of all criminal dispositions (Twenty-Second Ann Report of NY Judicial Conference, 1977, p 56). And, in any calendar year, guilty pleas may constitute 90-95% of all convictions obtained State-wide (see id., at p 58). To exclude the public from plea proceedings of codefendants is thus to exclude the public from the workings of a substantial part of the criminal justice system.[6]
The beneficial aspects of an open criminal justice system have been often enough discussed to need no repetition here (see, e.g., Gannett Co. v De Pasquale, 443 US 368, 407, 421-422, 427-433, supra [Blackmun, J., concurring and dissenting]; Friendly, Crime and Publicity; Note, The Right to Attend Criminal Hearings, 78 Col L Rev 1308). But it would not be amiss to note that if the plea is insulated from public view, the public may be deprived of their most effective method of determining whether elected officials are enforcing the law "with vigor and impartiality” (Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 437, supra). And, casting a veil of secrecy over the major component of the criminal justice system may well lead our citizens to view the judicial process with a suspicious eye (see People v Hinton, 31 NY2d 71, 73, supra). It is not enough that justice be done. It must be perceived as being done in the eyes of the public.
Finally, it bears emphasis that the closure motion in the present case was entertained in secret, with no representative of the public or media afforded an opportunity to voice opposition. Moreover, the motion was granted in summary fashion without any showing in support of it. These procedures cannot be sanctioned (Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 442, supra). The majority’s explanation —that closure occurred prior to the Westchester Rockland case — is unacceptable. Even prior to Westchester Rockland it was clear that closure could not be ordered absent some *729 showing of potential prejudice (Matter of Gannett Co. v De Pasquale, 43 NY2d 370, 376-381, affd 443 US 368, supra). Here, there was none. And, it had also been stated in Gannett that "the courts should of course afford interested members of the news media an opportunity to be heard * * * to determine the magnitude of any genuine public interest” (43 NY2d, at p 381). Since the closure in this case occurred after the procedural guidelines in Gannett were promulgated, the majority’s explanation of the improprieties does not bear scrutiny. Thus, the procedural irregularities alone would warrant reversal.
Accordingly, the judgment of the Appellate Division should be reversed.
Judges Jasen, Gabrielli, Jones and Fuchsberg concur with Judge Wachtler; Judge Meyer concurs in a separate opinion; Chief Judge Cooke dissents and votes to reverse in another opinion.
Judgment reversed, without costs, and matter remitted to the Appellate Division, Third Department, with directions to dismiss the proceeding solely on the ground of mootness.

. It should never be forgotten that the concept of a public trial has its genesis in concern for protection of the accused (see People v Hinton, 31 NY2d 71; Gannett Co. v De Pasquale, 443 US 368, 406 [Blackmun, J., concurring and dissenting]).

. As the majority correctly notes, the mootness exception recognized in Gannett and Leggett applies in instances where an important issue is capable of recurring while evading review (Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 436-437, supra; Matter of Gannett Co. v De Pasquale, 43 NY2d 370, 376, supra; see Matter of Carr v New York State Bd. of Elections, 40 NY2d 556, 559; see, also, Matter of United Press Assns. v Valente, 308 NY 71, 76). Since Leggett presented an issue substantially similar to Gannett, the retention of jurisdiction in Leggett apparently represents a policy decision by the court to continue to apply the mootness exception in closure cases. Alternatively, the court may have viewed Leggett as presenting a novel question, even after Gannett. Under either rationale, the mootness exception applies here.

. It is also difficult to understand how the majority can find this proceeding moot and yet effectively rule on the merits of the trial closure. By finding Westchester Rockland controlling, as discussed, the majority has held that a trial may constitutionally be closed, in instances not previously permitted.

. The two are not the same but are separate and distinct and they do not mix or merge. A justifiable closure of the suppression hearing did not envelop the plea for by nature and law there was a cessation of the former before the initiation of the latter.

. In People v Hinton (31 NY2d 71, supra), it was well stated at page 73: "Public trials, of necessity, serve a twofold purpose. They safeguard an accused’s right to be dealt with fairly and not to be unjustly condemned * * * and concomitantly serve to instill a sense of public trust in our judicial process by preventing the abuses of secret tribunals as exemplified by the Inquisition, Star Chamber and lettre de cachet * * *. Not only the defendant himself, but also the public at large has a vital stake in the concept of a public trial.”

. Even more troubling is the possibility of closure of a plenary trial where one defendant is to be tried separately from and before his codefendant.