OPINION OF THE COURT
Judith A. Hillery, J.
By order to show cause dated February 16, 1988, Gannett Satellite Information Network, Inc., corporate owner of the Poughkeepsie Journal, a Dutchess County newspaper, moves for an order vacating the "sealing order” of this court, dated January 20, 1988, at which time the District Attorney of Dutchess County, William V. Grady, applied to this court pursuant to County Law § 701 to disqualify himself and his office from proceeding in the above-entitled investigation. This investigation has received national and State-wide media coverage as the Tawana Brawley investigation. William V. Grady, District Attorney of Dutchess County, and Robert Abrams, Attorney-General of the State of New York, oppose said application.
CHRONOLOGICAL SYNOPSIS OF CERTAIN ASPECTS OF THE TAWANA BRAWLEY INVESTIGATION
Tawana Brawley was allegedly kidnapped on November 24, 1987 and was allegedly subsequently sexually assaulted in an unknown wooded area by six white males, one of whom displayed a police-like badge. Tawana Brawley was found semiconscious on November 28, 1987 in the Village of Wappingers Falls, Dutchess County, New York, in a plastic garbage bag, her hair chopped and her body covered with feces and with racial slurs, including "KKK” and "nigger” written on her body.
The incident was initially investigated by the Dutchess County Sheriffs Office. She was transported to St. Francis Hospital in the Town of Poughkeepsie where she received medical treatment and was released from the hospital later that evening. On November 28, 1987 or shortly thereafter, members of the Brawley family contacted WCBS Channel 2 TV station in New York City, thereby making public the Tawana Brawley incident.
On December 2, 1987, Harry Crist, Jr., a 28-year-old part-time Town of Fishkill police officer and a resident of the *985 Village of Wappingers Falls, committed suicide. The Brawley family pointed to the timing of Crist’s death and Tawana Brawley’s description of one of her assailants showing her a police-like badge as a reason to look into Crist’s possible involvement in this matter. In December 1987, FBI and State Police investigators joined the investigation. During December 1987, civil rights attorneys Alton Maddox, Jr., and C. Vernon Mason began representing the Brawley family. During December 1987 and January 1988, allegations were made alleging a cover-up by local Dutchess County authorities. State and local civil rights activists and clergy urged Governor Cuomo to appoint a Special Prosecutor. On January 4, 1988, an additional Dutchess County Court Grand Jury was impaneled and began hearing evidence in this criminal investigation. On January 13, 1988, Tawana Brawley and other family members defied Grand Jury subpoenas allegedly on advice of their attorneys who contend that there is a cover-up by local authorities.
On January 20, 1988, District Attorney William V. Grady moved this court for the appointment of a Special Prosecutor pursuant to section 701 of the County Law due to a conflict or potential conflict. District Attorney Grady requested that the court authorize the disclosure of the conflict or potential conflict in an in camera proceeding because CPL 190.25 (4) (a) mandates that Grand Jury proceedings be secret. District Attorney Grady also requested that this portion of the application be sealed for the same reason. The application of the District Attorney for closure and sealing of the transcript of that portion of the application which was taken by the court in the nature of sworn testimony by Chief Assistant District Attorney William J. O’Neill was granted by this court. On that date, the court found that the District Attorney had a conflict and that the appointment of a Special Prosecutor was appropriate for the reasons articulated by District Attorney Grady and Chief Assistant District Attorney O’Neill. On January 21, 1988, this court appointed David B. Sail, Special Prosecutor, and William T. Burke, Assistant Special Prosecutor. On January 22, 1988, after a review of the evidence available to the Special Prosecutor at that time, he concluded that it would be improper under the provisions of County Law § 701 for him to conduct the investigation in this matter. On that date, the court made application to the Honorable Mario M. Cuomo, Governor of the State of New York, pursuant to the New York State Constitution and section 63 (2) of the *986 Executive Law for the appointment of the Attorney-General of the State of New York to investigate this matter. Said appointment was made on January 26, 1988.
On February 18, 1988, the news media reported that Tawana Brawley, less than 72 hours after she was found, had written a note in which she allegedly wrote "I want him dead. I want Scoralick”. (The Sheriff of the County of Dutchess is Fred. W. Scoralick.) On February 20, 1988, attorney Maddox requested that Governor Cuomo appoint a new Special Prosecutor and thereafter on February 22, 1988, attorney Maddox requested that Governor Cuomo appoint Maddox as the Special Prosecutor in this matter. Governor Cuomo has not relieved the State Attorney-General and has publicly indicated that the State Supreme Court Grand Jury, impaneled on February 29, 1988, issued subpoenas to compel the attendance of Tawana Brawley and family members to testify before that Grand Jury and to force compliance with same by incarceration if Tawana Brawley and family members defy said subpoenas. Attorneys Maddox and Mason have indicated that Tawana Brawley, her family, and they, if subpoenaed, will defy those subpoenas and subject themselves to incarceration. To date, Tawana Brawley has failed to cooperate with the Office of the Attorney-General.
LEGAL ANALYSIS
The issue presented to this court appears to be one of first impression — whether the public may have access to sealed court transcripts in which the Office of the Dutchess County District Attorney conveyed to the court certain aspects of an ongoing criminal Grand Jury investigation, including Grand Jury testimony and information received by the Office of the District Attorney as a product of the Grand Jury investigation. Expressed another way: Does the public have the right to access to information conveyed to the court during the investigatory preindictment stages of a criminal investigation which information includes Grand Jury testimony and information which the District Attorney obtained during that investigation? This evidence and information was conveyed to the court so that the court could make an informed determination as to whether there was a legal basis for the District Attorney’s disqualification application.
This court knows and has long been an advocate that the public has an interest in seeing that the administration of *987 justice is carried out properly, impartially, and in such a manner that public trust in our criminal justice system is preserved. Courts have stressed that justice must not only be done, it must be perceived as being done (Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 437). Public trust and public confidence in the criminal justice system is usually accomplished by public access to all court proceedings. Indeed, section 4 of the Judiciary Law provides: "The sittings of every Court within this state shall be public, and every citizen may freely attend the same”.
Traditionally, challenges to closed court proceedings have involved indicted defendants at pretrial proceedings (Matter of Gannett Co. v De Pasquale, 43 NY2d 370, affd 443 US 368; Matter of Westchester Rockland Newspapers v Leggett, supra) or involved applications to obtain Grand Jury minutes of completed Grand Jury proceedings (Matter of Hynes v Karassik, 47 NY2d 659; Matter of Carey [Fischer] 68 AD2d 220; Matter of District Attorney of Suffolk County, 86 AD2d 294).
The instant application requests public access and disclosure of matters about which testimony had been received by the Grand Jury and information which is the product of the Grand Jury investigation.
CPL 190.25 (4) (a) provides that: "Grand jury proceedings are secret, and no grand juror, or other person * * * may, except in the lawful discharge of his duties or upon written order of the court, disclose the nature or substance of any grand jury testimony, evidence, or any decision, result or other matter attending a grand jury proceeding.”
This court finds that the information conveyed to this court on January 20, 1988 by Chief Assistant District Attorney William J. O’Neill was either information received as testimony by the January 1988 Grand Jury or information which was obtained as a product of the January 1988 Grand Jury proceeding. This court further finds that the evidence and/or information conveyed to this court by Chief Assistant District Attorney O’Neill may form, depending on the ultimate outcome of this investigation, the basis of an integral part of this investigation. This court further finds that portions of the evidence and/or information conveyed to this court may, depending on the ultimate outcome of this investigation, be either Rosario or Brady material or both (People v Rosario, 9 NY2d 286; Brady v Maryland, 373 US 83).
In People v Di Napoli (27 NY2d 229), the Court of Appeals *988 established criteria for maintaining secrecy and confidentiality of Grand Jury minutes in a completed Grand Jury proceeding. The Court of Appeals held that the court must consider:
1. The danger that a person who is about to be indicted may flee the jurisdiction of the court;
2. The danger of interference with the grand jurors by individuals under investigation;
3. The prevention of subornation of perjury and tampering with prospective witnesses at any trial to be held as a result of any indictment;
4. The protection of innocent individuals accused by unfounded accusations where no indictment is ultimately found; and
5. Assuring prospective witnesses that their identity and testimony will be kept secret so that they will testify candidly and freely.
Counsel for the applicant, Poughkeepsie Journal, has suggested that the court and the Dutchess County District Attorney erroneously failed to give the news media prior notice before closing the proceedings in question to the public (Press-Enterprise Co. v Riverside County Superior Ct., 478 US 1) (Press-Enterprise II). Press-Enterprise II (supra) involved an indicted defendant’s application to exclude the public from a preliminary hearing. This court finds that the Press-Enterprise II standard for closure and its requirement that the court make specific findings on the record demonstrating that closure is essential does not apply to District Attorney Grady’s ex parte preindictment application.
The application of the District Attorney of Dutchess County was made during the early stages of a Grand Jury presentation and during an ongoing, continuing, and still incomplete, Grand Jury investigation. The Poughkeepsie Journal is, in essence, requesting that this court make public and permit public access to an attorney’s, in this case the District Attorney’s, work product. The Poughkeepsie Journal has conceded that it cannot have access to Grand Jury minutes.
The court cannot find any valid reason why this application should be granted. Indeed, the Poughkeepsie Journal has failed to articulate any compelling reasons for granting this application. The court, however, does find valid reasons for denying this application.
The District Attorney and now the Attorney-General of the State of New York have a constitutional duty to maintain the *989 integrity of this investigation. The court finds that continued confidentiality of these matters, rather than the public disclosure of same, is more likely to accomplish the following:
1. ensure the cooperation of known witnesses and potential witnesses;
2. protect innocent individuals against unfounded and baseless accusations;
3. protect against the tailoring of Grand Jury testimony to either substantiate or explain away certain aspects of this investigation;
4. enhance the probability that a potential Grand Jury indictment cannot be constitutionally challenged by subsequently indicted defendants;
5. prevent tampering with witnesses and witnesses’ testimony by any interested party;
6. encourage candid and full disclosure by prosecutors to the judiciary concerning matters requiring judicial intervention and determination and maintain public confidence in the integrity of Grand Jury proceedings.
For the foregoing reasons, the application of the Poughkeepsie Journal is in all respects denied.