■ NATIONAL BANK OF STAMFORD, Respondent, v EARL R. WRIGHT et al., Appellants. — Appeals (1) from an order of the Supreme Court at Special Term (Harlem, J.), entered January 2, 1981 in Delaware County, which, *inter alia,* denied defendants' motion to vacate a default judgment, and (2) from an order of said court, entered September 21, 1983 in Delaware County, which, *inter alia,* denied defendants' motion to renew its prior motion. ¶ Defendants were dairy farmers in the Town of Roxbury, Delaware County. In May of 1977, they opened a secured line of credit with plaintiff, which was rewritten periodically as new moneys were added. On August 13, 1980, defendants' debt was consolidated into a single demand note for $143,204.89, representing the full principal balance due. The physical appearance of the document was such that the bottom third was the promissory note and the top two thirds was a truth-in-lending statement. Each portion was separately executed. The note was secured by various items of personal property, itemized in security agreements executed May 23 and 24, 1977; included in the rather exhaustive list of personal property were machinery, equipment and 65 dairy cattle. ¶ Because of a mastitis infection, defendants sold off 40 of the cows between May, 1977 and November, 1980. As the proceeds from the sales were insufficient to enable them to purchase replacements, defendants then leased dairy cows in order to maintain their milk production level. Plaintiff, upon discovering that a substantial and integral part of the collateral securing the loan had been sold without its having received the revenue from those sales or an accounting thereof, declared the note in default because defendants' ability to repay the unpaid balance had been substantially affected. Payment in full having been demanded and refused, plaintiff then served a summons and complaint on defendants on November 25, 1980 demanding immediate possession of all the collateral, together with an order to show cause, returnable the following day, temporarily restraining them from disposing of any of the cattle, machinery or equipment. Defendants, who allegedly had difficulty securing counsel, appeared in court themselves on the return date at which time plaintiff's preliminary injunction application was granted and defendants were enjoined from further disposing of the collateral. Before granting plaintiff's application, Special Term, at defendants' request, spoke by telephone with an attorney defendants had earlier communicated with regarding these proceedings. ¶ On December 18, 1980, the day the default judgment was granted, defendants were able to retain counsel, who promptly moved by order to show cause to have the default judgment, which had been entered on December 19, vacated, and also to compel plaintiff to accept defendants' unverified proposed answer reciting in conclusory fashion nine counterclaims. The bulk of the counterclaims were simply recast affirmative defenses and included charges of negligence, defamation and tortious interference with defendants' business; sub-

stantial money damages were demanded. That motion by defendants was denied, and the order entered thereon on January 2, 1981, declared that "defendants have set forth only the barest conclusory assertions regarding the merits of the proposed answer and have failed to set forth facts which would support their denials and defenses". ¶ Seizure of defendants' cattle and farm equipment pursuant to that order was temporarily interrupted when, on January 12, 1981, defendants filed bankruptcy, thereby staying further State court activity. However, on May 10, 1982, the Federal bankruptcy court granted plaintiff relief from the automatic stay provisions by permitting plaintiff to take possession and dispose of the cattle, machinery and equipment chatteled under the security agreement given by defendants to plaintiff. In opposition to that application, defendants put before the bankruptcy court many of the same defenses and counterclaims they attempted to interpose on their motion to vacate the default judgment entered in the instant State action. In May, 1983, defendants moved in bankruptcy court on grounds similar to those being advanced here to vacate the bankruptcy court's order of May 10, 1982. That application was denied and repossession and sale of the secured personal property has since been completed. Defendants' continued interest in vacating the default judgment stems from a desire to prevent that judgment from "spawning any legal consequences", such as its possible *res judicata* effect in a damage action defendants have brought in the United States District Court against plaintiff and its counsel for claimed civil rights violations. ¶ Inasmuch as there are no meritorious defenses to plaintiff's action, an affirmance is required. The principal argument for vacating the default judgment, namely, that it was procured by fraud, misrepresentation and misconduct, lacks conviction. It is contended that plaintiff, by attaching only the promissory note and not the truth-in-lending document to its complaint, attempted to mislead Special Term. In defendants' view, the truth-in-lending document is in reality a "security agreement" superseding those executed on May 23 and 24, 1977, but which, unlike the earlier security agreements, did not require defendants to first obtain plaintiff's consent before undertaking to sell or dispose of the collateral; hence, the sale of the 40 cattle by defendants did not constitute a default. However, this document is not only labeled a truth-in-lending statement directly above defendants' signatures, but a reading of it in full can lead to no other interpretation. Furthermore, it is undisputed that defendants were not induced to believe, nor did they believe, that it was anything else. Consequently, plaintiff's failure to attach it to the complaint is of no legal significance. ¶ Nor can we accept defendants' assertion that the averments of plaintiff's counsel that they had not been asked for an extension of time before the default judgment was entered are contrary to fact. Although they admittedly had an inquiry from an attorney on December 16, 1980 as to the status of the case and advised that entry of a default judgment was imminent, the attorney had not been retained by defendants and, accordingly, was in no position to request an extension on their behalf. ¶ Another of defendants' arguments needing to be addressed is their contention that, since they were personally present in court on the day the temporary restraining order was issued, this constituted an appearance entitling them to the statutory five-day notice of default (CPLR 3215, subd [f], par 1). The failure to provide such notice, however, does not reduce plaintiff's judgment to a nullity, for on a motion to renew the movant is obliged, and here defendants have failed, to offer a sufficient excuse as to why this issue was not raised on the original motion to vacate the default. Defendants' explanation for neglecting to bring this procedural deficiency (i.e., their counsel's alleged excusable neglect) to Special Term's attention is simply too little, too late; especially so here where no meritorious defense is evident and, in the interim, the bank has

already legally acquired and disposed of the collateral because of defendants' bankruptcy. ¶ Parenthetically, a further ground for denying defendants the relief they seek is that events have caused this appeal to become moot. An appeal is moot unless the rights of the parties will be directly affected by the determination of the appeal and the interest of the parties is an immediate consequence of the judgment (*Matter of Hearst Corp. v Clyne,* 50 NY2d 707, 714). In this instance, since plaintiff had already obtained possession of the collateral it sued to repossess by order of the bankruptcy court, the underlying action has no purpose. As the rights of the parties to the collateral cannot be affected by the resolution of this appeal, it is moot. The possibility that the default judgment, which defendants would have us vacate before dismissing the underlying action for mootness, may have *res judicata* effect is insufficient to bring this case within the exception to the doctrine of mootness; there is no likelihood of repetition, we are not presented with a phenomenon typically evading review, and there has been no showing of any significant or important questions not previously passed upon (*id.,* at pp 714-715). ¶ Orders affirmed, without costs. Kane, J. P., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.