Roxrun Estates, Inc., et al., Respondents-Appellants, v Roxbury Run Village Association, Inc., Appellant-Respondent, et al., Defendants. (Action No. 1.)

RR Village Association, Inc., Respondent, v Roxrun Estates, Inc., Appellant. (Action No. 2.)

Third Department, March 31, 1988

**APPEARANCES OF COUNSEL**

*Frank Taddeo (Patrick J. Rohan* of counsel), for Roxrun Estates, Inc., appellant.

*Mark Lewis Brecker* for LGP Gem, Ltd., appellant.

*Herbert Jordan* and *Randlett Walster* for RR Village Association, Inc., respondent.

WEISS, J.

Roxbury Run Corporation (hereinafter Roxbury Run), a New York corporation with its principal place of business in Delaware County, filed an offering statement with the State Department of Law in August 1972 for a proposed 500-unit townhouse development on a 200-acre parcel in that county. A "Declaration of Covenants, Conditions and Restrictions" (hereinafter the Declaration) defining the rights and responsibilities of the property owners, sponsor and property owners' association was attached to the offering statement. A not-for-profit corporation, Roxbury Run Village Association, Inc. (hereinafter RRVA), was formed on June 12, 1972 to construct and maintain the recreational facilities and common areas of the planned development. RRVA had two classes of members; class A, the owners of improved property who were entitled to one vote for each unit owned, and class B, the sponsor-developer Roxbury Run, which had three votes per unit owned, whether improved or not. RRVA's certificate of incorporation was amended on July 20, 1972 to accelerate the conversion of all class B memberships to class A memberships from the original date of December 31, 1982 to December 31, 1979, after which date "Class B membership shall cease".

RRVA financed its operations by levying and collecting annual maintenance assessments, property tax assessments and special assessments for capital improvements. The sole class B member, Roxbury Run, paid only 15% of the per-unit maintenance assessments, but 100% of any special assessment. The affirmative votes of the class B member and two thirds of the class A members were required to approve any increase greater than 5% in the maintenance assessment or to levy any special assessment. RRVA was empowered to enforce collection of assessments through foreclosure proceedings "in a like manner as a mortgage lien". During the first 10 years, Roxbury Run essentially controlled RRVA since it retained ownership of approximately 400 units.

On September 2, 1982, an amendment to the Declaration was duly recorded in the Delaware County Clerk's office providing several significant changes, summarized as follows: the total number of proposed units was decreased from 500 to 250, Roxbury Run relinquished control of the RRVA board of directors by reducing the number of directors it could elect from 5 to 2 and the sponsor's 15% maintenance assessment

for "Class B sites" was reduced to $6.06 per month per unit. A follow-up amendment to the offering statement, dated October 22, 1982, limited Roxbury Run to "99 votes on future matters even if its ownership of Units would otherwise enable it to cast a greater number of votes". By virtue of this amendment, Roxbury Run surrendered control of RRVA to the individual members.

In September 1982, Roxrun Estates, Inc. (hereinafter Roxrun Estates) purchased 130 unimproved townhouse lots from Roxbury Run for $300,000, paid in the form of precious gems provided by LGP Gem, Ltd. The sale apparently included all of the remaining unimproved lots in the development and was conditioned upon Roxrun Estates' right to pay only 15% of the maintenance assessments, or the lesser maintenance charge of $6.06 as set forth in the 1982 amendment to the Declaration.

The instant controversy was generated by a special meeting of RRVA conducted February 17, 1985, at which the maintenance assessment was increased to $85 per unit per month and a special assessment of $750 per unit was imposed. Although a Roxrun Estates representative was present, he was advised by the RRVA board of directors that Roxrun Estates was entitled to exercise only one vote, and not the 99 votes specified in the October 1982 amendment. Additionally, RRVA took the position that Roxrun Estates was required to pay the maintenance and special assessments at the same rate as the individual owners, i.e., 100%.

On April 25, 1985, anticipating a foreclosure action for nonpayment of the assessments, Roxrun Estates commenced a declaratory judgment action (hereinafter action No. 1) in New York County against RRVA, Roxbury Run and the latter's principal shareholder, Sheldon Goldstein. Thereafter, on May 2, 1985, RRVA commenced a foreclosure action (hereinafter action No. 2) against Roxrun Estates. Although a myriad of events ensued, and the appeals from all the above-noted orders have been consolidated for our review, we focus on Supreme Court's determination in action No. 2 granting RRVA summary judgment in the foreclosure action. The validity of the foreclosure judgment necessarily resolves the remaining disputes before us.[1] We note that while these appeals were pending, Roxrun Estates filed a voluntary bankruptcy petition in December 1986, resulting in an automatic

---

1. We observe that Roxrun Estates settled its action against Roxbury Run and Goldstein.

stay of the foreclosure sale and pending State court appeals *(see, In re Roxrun Estates,* 74 Bankr 997, 999, 1000). Following a hearing, Bankruptcy Court lifted the stay and RRVA purchased Roxrun Estates' 130 lots at a foreclosure sale for $100.

■ Initially, we observe that Roxrun Estates is not collaterally estopped from challenging the validity of the foreclosure judgment as a result of the bankruptcy proceeding *(see, In re Roxrun Estates, supra).* The central issue before Bankruptcy Court was RRVA's motion to lift the 11 USC § 362 stay. A close review of that decision confirms that the parties did not litigate the validity of the underlying lien, which Bankruptcy Court simply presumed valid for purposes of resolving the stay issue. RRVA's further assertion that any appeal concerning Roxrun Estates' voting rights has been rendered moot by the sale of the property is entirely unpersuasive. A resolution of the voting rights dispute in Roxrun Estates' favor would undermine the assessments approved at the February 1985 meeting, the liens based on those assessments and the foreclosure judgment arising from the liens. Clearly, the parties' rights remain directly in issue *(see, National Bank v Wright,* 101 AD2d 963, 965, *appeal dismissed* 63 NY2d 603).

■ In determining the propriety of the foreclosure judgment, the decisive question is what voting rights Roxrun Estates was entitled to exercise at the February 1985 RRVA meeting. RRVA maintains that by virtue of the amended certificate of incorporation, class B membership expired in December 1979 and, therefore, Roxrun Estates was entitled to exercise only one vote as a single class A member. Roxrun Estates counters that the 1982 amendments to the Declaration effectively revived its class B status, entitling it to cast votes based on the number of sites owned, not to exceed 99. Upon examining the pertinent documents, Supreme Court concluded that class B membership definitively expired in December 1979. We agree. Although the 1982 amendments referred to "Class B sites" and Roxrun Estates' right to exercise 99 votes, and reduced the sponsor's maintenance assessment contribution, neither amendment expressly recreated a second membership classification. Consequently, since the 1979 expiration date remained intact, Roxrun Estates was entitled to participate in the February 1985 meeting as a class A member only.

The issue further distills to what voting rights Roxrun Estates enjoyed as a class A member. N-PCL 611 (e) provides that "[i]n any case in which a member is entitled to vote, he shall have no more than, nor less than, one vote". In *Procopio*

*v Fisher* (83 AD2d 757) the Fourth Department construed this provision as effectuating a " 'one-man, one-vote rule' ", regardless of the number of units a class member might own *(supra,* at 758).[2] We concur in this analysis. Since the primary objective of a not-for-profit corporation is not to generate a return on invested capital, power is more appropriately shared between members on an equivalent basis, rather than on the degree of investment *(see,* 6 White, New York Corporations ¶ 611.01 [13th ed]). Significantly, in 1971 the Legislature specifically deleted the statutory language authorizing deviations from the one vote per member rule *(see,* L 1971, ch 1058, § 17; *see also,* McKinney's Cons Laws of NY, Book 1, Statutes § 193 [a]). To the extent the certificate of incorporation and the Declaration provide for class A voting rights on the basis of one vote per unit, neither is effective. It follows that Roxrun Estates was entitled to cast one vote at the February 1985 meeting, which, even if exercised, would not have affected the actual voting outcome. As a result, the increased assessments approved at the February 1985 meeting were valid. Roxrun Estates' failure to pay the assessments due gave rise to a lien against the realty for which a judgment of foreclosure and sale was properly entered.

Having upheld the validity of the foreclosure judgment, the cross appeals from the two orders in action No. 1 pertaining to temporary injunctions have effectively been rendered academic. Insofar as action No. 1 is concerned, the only remaining issue concerns RRVA's assertion that Supreme Court erred in holding Roxrun Estates liable for only 15% of the maintenance assessments. RRVA maintains that the disparity in treatment between Roxrun Estates and the remaining owners who are required to pay maintenance assessments at a 100% rate violates N-PCL 507 (b). We disagree. This provision requires that "assessments payable by members of one class shall be determined upon the same basis", but not that all assessments be equal. Here, Supreme Court imposed a reduced assessment for Roxrun Estates because of the "differing costs of maintaining improved properties as opposed to unimproved properties". While the resulting assessments differed, they were "determined upon the same basis", i.e., the cost of maintaining the properties.

---

2. This holding only applies to members of the same class, for other classifications may be accorded different voting powers (N-PCL 601 [a]; 612).

MAHONEY, P. J., KANE, LEVINE and MERCURE, JJ., concur.

Cross appeals from orders entered July 1, 1985 and November 21, 1985 dismissed, as academic, without costs.

Orders entered December 24, 1985 and October 2, 1986 affirmed, without costs.