■ In the Matter of ALAN B. WEISSMAN et al., Respondents-Appellants, v CITY OF NEW YORK et al., Appellants-Respondents. — Order and judgment (one paper), Supreme Court, New York County (Martin Evans, J.), entered February 15, 1983, which, *inter alia,* directed the city to issue a temporary vacate order requiring tenants to vacate the premises on or before April 30, 1983, enjoined the city from prosecuting criminal or civil violations, directed the city department of buildings to issue an alteration permit, ordered the owner to expeditiously complete work to make the building structurally sound and to correct all violations within six months, and preserved the right of the tenants to reoccupy the premises, retaining their rent-control or rent-stabilized status following completion of the work and approval of same by the department of buildings, unanimously reversed, on the law, and the petition dismissed, without costs or disbursements. The motion for relief, *inter alia,* enlarging the record, is granted, without costs, only to the extent of permitting the filing of the supplemental record on appeal, which has been considered. Petitioners, owners of premises located at 400-406 West 57th Street, New York, New York, brought this proceeding pursuant to CPLR article 78 to direct the commissioner of the department of buildings to issue a vacate order and to annul the city's revocation of an alteration work permit which had been issued. 406 West

57th Street is a tenement, approximately 130 years old, located in Manhattan's west side, adjoining the Clinton historic preservation area. The building, predominantly occupied by rent-control and rent-stabilized tenants, is contiguous to two structures also owned by petitioners, 400 and 404 West 57th Street, which contain primarily single-room occupancy units. Although all three buildings have common ownership and are not separated either by open space or zoning lot lines, only 25 feet of 400 West 57th Street is within the Special Clinton District. The owners seek removal of all tenants in advance of major structural alterations and repairs, which they claim to be necessary to rectify the unsafe condition of the building, a condition hazardous to occupants and placing the building in imminent threat of collapse. On December 23, 1981, the department of buildings issued an alteration permit following the filing of an application and plans, which proposed major renovation work and the issuance of a new certificate of occupancy for a single building. After an inspection by the department, notices of violation were issued, the inspectors concluding that it was unnecessary to vacate the premises to perform the work. Accordingly, on April 30, 1982, the city revoked the alteration permit, asserting that there had been noncompliance with zoning resolution section 96-109, which, for a building located within the preservation area of the Special Clinton District, required prior certification from the housing administrator that there had been no tenant harassment. In that period, petitioners had been found guilty of criminal contempt for harassing tenants (Civil Ct, New York County, Housing Part 49-D, Sept. 21, 1981, George, H. J.). During the pendency of this appeal that order was modified by the Appellate Term, First Department (May 24, 1983) to the extent of striking the decretal paragraph finding that the owner was in contempt. Three subsequent inspections by the office of the Manhattan borough superintendent found violations but again concluded that there was no evidence of structural failure so as to warrant evacuation of the building, albeit the violations were found to require immediate remedial work which the department determined could be performed without the tenants vacating the premises. This proceeding was commenced on June 21, 1982, the petition seeking a stay of the order of the city to effect immediate repairs and to compel the city to issue a vacate order. Most of the remaining tenants, who moved to intervene, opposed issuance of a vacate order or an alteration permit, contending that such an order or permit would interfere with their occupancy. They argued that the owner did not intend to correct the violations but planned to convert the premises to luxury housing accommodations and, for that purpose, sought to remove control and stabilized tenants therefrom. In support of their position, the tenants referred to the fact that after the original, August, 1980 application by the landlord to permit the alteration had been denied, 52 holdover proceedings were commenced, all of which were dismissed. They claim that, subsequently, the landlord offered each of the remaining tenants monetary settlements to quit possession. The record reflects that the parties are in agreement as to the need for substantial repairs. They disagree, however, as to whether the extent of the violations rendered the building hazardous to continued occupancy and whether removal of the tenants was necessary to effect structural alterations. Special Term held it was unnecessary for petitioners to exhaust their administrative remedies by pursuing an appeal to the Board of Standards and Appeals from the refusal of the department of buildings to issue a vacate order and the revocation of the alteration permit. Thus, the court sustained mandamus as an available remedy to compel performance of a nondiscretionary act and to correct an emergency situation where there was a possibility of irreparable harm (*Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52). In so holding, Special Term concluded that the adjoining structures were to be considered as one building for zoning purposes

and, inasmuch as the three buildings comprised one zoning lot which existed before creation of the Special Clinton District, zoning resolution section 77-11 applied and it was unnecessary for the owners to obtain a certification of no harassment in advance of issuance of the alteration permit. On a finding that the zoning resolution for the Special Clinton District was inapplicable, it was held that the city had improperly revoked the permit. While Special Term concluded that the city did not act arbitrarily or capriciously in declining to issue a vacate order, nevertheless, it was determined that the structural work necessary required that the premises be vacated. Relying upon subdivisions c and d of section C26-85.5 of the Administrative Code of the City of New York, Special Term found it was authorized to issue a temporary vacate order directing tenants to vacate the building, thus affording the landlord a six-month period to complete needed repairs and, to effectuate that, directed the city to issue a new alteration permit. The order and judgment entered preserved the rights of the tenants under rent control and rent stabilization, provided that the tenants be restored to occupancy upon completion of repairs, and enjoined the city from prosecuting civil or criminal violations. Affording to the tenants sufficient opportunity to relocate during the period alterations were to be performed, the court suspended any obligation to pay rent during the time any apartment was vacant. All parties have appealed, although petitioners have apparently abandoned their cross appeal. While we fully appreciate the nature, inherent danger and severity of the problems which confronted Special Term, on this record, the court lacked jurisdiction to pass upon the propriety of the city's refusal to issue a vacate order. Subdivisions c and d of section C26-85.5 of the Administrative Code, under which Special Term proceeded, authorize a judicial application and appropriate authority restraining order upon application of the city, "in the discretion of the superintendent". We agree that in an emergency situation the exercise of authority by the judiciary might be appropriate. However, the finding by Special Term that the city was neither arbitrary nor capricious in refusing to issue a vacate order is inconsistent with a finding that there was such an emergency. Under the circumstances, petitioners had an available remedy through administrative review before the Board of Standards and Appeals (NY City Charter, § 648). The failure to exhaust administrative remedies is dispositive. The matter should have been presented to the Board of Standards and Appeals, who had primary jurisdiction and the necessary expertise to consider the issue in the first instance, or at least on review from the determination of the department of buildings (*Young Men's Christian Assn. v Rochester Pure Waters Dist.*, 37 NY2d 371, 375). While it appears that the city, during the pendency of this appeal, issued a temporary vacate order and the building has now been vacated, which would render that branch of the appeal academic, the record does not disclose whether the issuance and subsequent emptying of the building resulted from a change in position by the administrative body or was in compliance with the order and judgment before us on this appeal. Nevertheless, we deem the issue of sufficient importance as to warrant our consideration on the merits (cf. *Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714-715). Similarly, the issue of whether this building was subject to the restrictive provisions of the Special Clinton District was a matter within the primary jurisdiction of the Board of Standards and Appeals. The court found that the buildings constituted one building on one zoning lot in concluding that zoning resolutions sections 96-108 and 96-109 were inapplicable. The question should have been appropriately first presented to the board to pass upon the issue in advance of any proceeding for judicial review. Under the circumstances, Special Term should have deferred to the primary jurisdiction of the administrative agency (*Young Men's Christian Assn. v Rochester Pure Waters Dist.*, 37

NY2d, at p 375; *Greenthal & Co. v 301 East 21st St. Tenants' Assn.*, 91 AD2d 934, 935; *Fusco v New York Prop. Underwriters Assoc.*, 70 AD2d 895, 896). Particularly in a case like this, where the issue is complex, involving the interpretation of various zoning resolutions, the issue should be presented in the first instance to the administrative body with the necessary expertise to fully consider the underlying merits. Further, the record does not affirmatively demonstrate what impact the prior finding of harassment had upon the determination of Special Term or the city in revoking the alteration permit. The subsequent disposition by the Appellate Term, modifying the order of the Housing Court to vacate the contempt citation on that ground may well have a bearing on the issue. In any event, this is likewise a matter for the Board of Standards and Appeals, which has primary jurisdiction to fully consider and pass upon the issue. Concur — Murphy, P. J., Ross, Asch, Kassal and Alexander, JJ.