OPINION OF THE COURT
William H. Keniry, J.
This proceeding, initiated under section 9.25 of the Mental Hygiene Law, raises an issue of law never before decided.
Harold F. was involuntarily admitted to the Capital District Psychiatric Center (CDPC) on September 18, 1989 pursuant to *594 a court order. On November 1, 1989, Mr. F. converted his status to that of a voluntary patient (Mental Hygiene Law § 9.13) and he remained hospitalized in such status as of the date of this proceeding. Mr. F., who is 18 years old, wished to terminate his in-patient treatment and be admitted to a community residence where he would receive out-patient treatment.
The Mental Hygiene Legal Service (MHLS) as petitioner on behalf of Harold F., a patient at Capital District Psychiatric Center (CDPC), seeks an order determining (1) the suitability and willingness of Harold F. to remain at CDPC under voluntary status and (2) directing CDPC to discharge Harold F. to an appropriate community placement. The court on the initial return date ordered the appointment of an independent psychiatrist to examine Harold F., file a report, and "if need be”, testify as to the condition of Harold F. The proceeding was adjourned to permit the examination to take place. The report was filed and a hearing was held before the undersigned on April 12,1990.
The respondent CDPC orally moved to dismiss the petition asserting that the court "lacked subject matter jurisdiction” over this proceeding. After reserving decision on the motion, the court received testimony as to CDPC’s efforts to secure a community residence placement for Harold F. CDPC objected to the petitioner’s introduction into evidence of the written report of the court-appointed independent psychiatrist.
Petitioner requested an order directing that Harold F. be discharged from CDPC and placed in an appropriate community residential setting. The basis of the petitioner’s motion is that Harold F. is not willing to remain at CDPC, does not meet the involuntary civil commitment standard, and is entitled as a matter of law to receive treatment in the least restrictive environment. CDPC renewed its argument that the court "lacked subject matter jurisdiction” to direct that Harold F. be placed in a community-based treatment setting as the least restrictive alternative. The court granted leave to the parties to submit papers on the questions presented in this proceeding.
While the matter was under the court’s consideration, Harold F. was formally discharged from CDPC on May 14, 1990 and was placed in an out-patient facility known as Jansen House. Such placement was the ultimate relief that the petitioner sought on behalf of Mr. F.
*595 The court must first decide whether the proceeding is moot. "Courts are loathe to adjudicate controversies that, although once live, have been rendered moot with the passage of time or a change in circumstances” (Matter of McMahon v Landon, 154 AD2d 745). The rule is not absolute and there are exceptions particularly where the issue presented is likely to be raised again, where the issue typically evades judicial review, and where the issue is significant and novel (Matter of Hearst Corp. v Clyne, 50 NY2d 707; People ex rel. Leonard HH. v Nixon, 148 AD2d 75, 78).
One issue presented in this case, namely, whether or not the Mental Hygiene Legal Service can properly petition for a review of the status of voluntary patient under Mental Hygiene Law § 9.25 before the expiration of 12 months, should be adjudicated notwithstanding CDPC’s discharge of Mr. F. In the court’s opinion, that issue falls within an exception to the mootness doctrine. The court will decide the issue (see, People ex rel. Leonard HH. v Nixon, 148 AD2d 75, 78, supra).
The resolution of the legal issue hinges upon the court’s interpretation and application of section 9.25 of the Mental Hygiene Law. The statute reads, in part, as follows:
"(a) No voluntary or informal patient, whether admitted on such status or converted thereto, shall be continued in such status for a period beyond twelve months from the date of commencement of such status or beyond twelve months from the effective date of this statute, whichever is later, unless the suitability of such patient to remain in such status and his willingness to so remain have been reviewed. The director shall review the suitability of such patient to remain in such status, and the mental hygiene legal service shall review the willingness of such patient to remain in such status. Notice of the determination of the patient’s suitability made by the director shall be given to the mental hygiene legal service. If the mental hygiene legal service finds that there is any ground to doubt the director’s determination of the suitability of such patient to remain in a voluntary or informal status or the willingness of the patient to so remain, it shall make an application upon notice to the patient and the director of the hospital, for a court order determining those questions. In any such proceeding, the patient or someone on his behalf or the mental hygiene legal service may request a hearing. If the mental hygiene legal service finds no grounds to doubt the determination of the director as to the suitability, or the *596 willingness of the patient to continue in a voluntary or informal status, it shall so certify and the patient may be continued in the hospital in such status. A copy of such certification of review shall be filed in the patient’s record * * *
"(c) If an application for a court order has been made, the court, in determining the proceeding, may approve the continued hospitalization of the patient as a voluntary or informal patient or, if the court finds that the patient is not suitable or willing to continue as a voluntary or informal patient, it may order the discharge of the patient or make such other order as it may deem appropriate in the circumstances.”
CDPC argues that since Mr. F. has been hospitalized as a voluntary patient for less than one year, the review procedure set forth in section 9.25 (a) is inapplicable. CDPC contends that Mr. F. has a remedy under section 9.13 (b) of the Mental Hygiene Law to secure his release by simply asking in writing to be discharged.
The petitioner contends that the 12-month reference in section 9.25 (a) specifies the maximum time in which a status review must be held but that MHLS is empowered to initiate an earlier inquiry whenever it doubts the suitability and/or willingness of a voluntary patient to remain hospitalized.
The court has reviewed section 9.25 and holds that it has jurisdiction to consider the suitability and willingness of Harold F. to remain as a voluntary patient. Broad, liberal readings of statutes involving the hospitalizations of the mentally ill have long been favored (see, Matter of Buttonow, 23 NY2d 385). Section 9.25 (a) mandates that a suitability review of a voluntary patient’s status be conducted at a minimum of 12 months after the date that such status commenced. The statute does not, by its language, preclude an earlier judicial review under appropriate circumstances. The petitioner possesses the right under section 9.25 to initiate a suitability review whenever it doubts the suitability and/or willingness of a voluntary patient to remain hospitalized.
The motion of respondent CDPC to dismiss the proceeding on jurisdictional grounds is denied, without costs.
The court will not decide the issues raised pertaining to the admissibility of Dr. Camperlengo’s report or the request that the court direct CDPC to discharge Mr. F. to an appropriate community placement. Such issues are moot.