OPINION OF THE COURT
Raymond E. Cornelius, J.
This declaratory judgment action has been commenced on behalf of Anthony M., who had formerly been a patient at the Willard Psychiatric Center, and is currently a resident of a family care home certified by the New York State Office of Mental Health. More particularly, the complaint requests a judgment declaring the plaintiff’s rights, as a mentally ill person, under articles 7, 29, and 31 of the Mental Hygiene Law, as well as his rights to adult protective services, pursuant to Social Services Law, § 473, have been violated by the defendants. Application is also made for a permanent injunction, directing that the defendants take all necessary action to fulfill their statutory duties to insure required medical care of the plaintiff.
At the time the action was commenced, the plaintiff was 85 *808 years of age, and had been diagnosed with a psychiatric condition of chronic residual schizophrenia and dementia. On June 30, 1986, after having been institutionalized for over 25 years at the Willard Psychiatric Center as an in-patient, the plaintiff was placed in a family care home. It should be emphasized that the official policy of the State of New York is to provide treatment and rehabilitative services for mentally ill citizens in their home community, whenever possible, and the responsibilities of the Office of Mental Health include the issuance of operating certificates for family care homes. (See, Mental Hygiene Law §§ 7.01, 31.03 [c].)
In May of 1992, the plaintiff developed an eye infection, and an examination by an ophthalmologist in August of 1992 resulted in a diagnosis of "right lower lid entropion”. This consists of an abnormal condition of the eye lid causing the eye lashes to rub against the surface of the eyeball. Initially, the plaintiff was treated by taping of the eye, but this did not resolve the problem, and a further examination by the ophthalmologist on October 5, 1992 resulted in a recommendation that the right lower lid entropion be repaired by surgery. However, the plaintiff does not possess the requisite mental capacity to give an informed consent to eye surgery, nor does he have any known relatives who could serve as a surrogate and give consent to such medical procedure.
In a letter, dated October 30, 1992, a staff member at the Willard Psychiatric Center advised the Yates County Department of Social Services of the ophthalmologist’s recommendation regarding eye surgery for Anthony M., and requested their assistance to act "as a surrogate decision maker”. However, in a letter written in response thereto, dated November 9, 1992, the Yates County Department of Social Services took the position that the agency was "unable to help” and "unwilling” to take legal action. The Commissioner of the Yates County Department of Social Services allegedly relied, in part, at least, upon an administrative directive from the New York State Department of Social Services, dated October 25, 1990. In essence, and in relevant part, this directive provides that residents of long-term residential care facilities, certified by the Office of Mental Health, were generally not to be considered eligible for protective services to adults, with the exception of clients currently in receipt of such services in the community and placed into one of the enumerated facilities. (See, 90 ADM-40 [III] [C] [6], at 12.)
In a letter, dated December 10, 1992, addressed to the *809 director of the Mental Hygiene Legal Service, Fourth Department, the executive director of the Willard Psychiatric Center asserted the position that his facility was "no longer able to petition the court for permission for medical-surgical care if a family care resident lacks the capacity to make health care decisions for him/herself and lacks a surrogate.” This action was then commenced on December 29, 1992, by the filing of a summons and complaint with the Monroe County Clerk. Thereafter, in March of 1993, and notwithstanding the previous announced position as expressed in the letter of December 10, 1992, the executive director of the Willard Psychiatric Center petitioned the Supreme Court, County of Seneca, for an order granting permission for the necessary eye surgery to be performed for the plaintiff. The court subsequently issued such an order, and the surgery was performed on June 9, 1993.
A motion has now been made, on behalf of the plaintiff, for summary judgment, and the defendants have cross-moved for the same relief on the grounds that there is no longer a justiciable issue. In his letter of December 10, 1992, the executive director of the Willard Psychiatric Center expressed the opinion that a "void” had been created "in the ability of some of the Family Care residents to receive appropriate and timely medical or surgical care”. This would appear to indicate, to use the popular vernacular, that a person in the position of Anthony M., who had formerly been an in-patient, but thereafter placed in a family care home, would fall "between the cracks” in the system, in terms of being provided needed medical services. However, based upon a review of the relevant statutes and regulations, the court is unable to agree with this view.
First, in regard to the Office of Mental Health, this agency has, without limitation, "responsibility for seeing that mentally ill persons are provided with care and treatment”. (Mental Hygiene Law § 7.07 [c].) Furthermore, upon discharge from a psychiatric in-patient facility, a written service plan must be prepared in cooperation with appropriate social services officials and others. (Mental Hygiene Law § 29.15 [f], [g].) In such instance, the director of the facility from which the patient has been discharged must, again, with appropriate social services officials and others:
"prepare, to cause to be implemented, and to monitor a comprehensive program designed:
*810 "1. to determine whether the residence in which such client or patient is living, is adequate and appropriate for the needs of such patient or client;
"2. to verify that such patient or client is receiving the services specified in such patient’s or client’s written service plan; and
"3. to recommend, and to take steps to assure the provision of, any additional services.” (Mental Hygiene Law § 29.15 [h].)
Furthermore, the Commissioner of the Office of Mental Health must prepare an annual report concerning the delivery of care and services in family care homes, including specific efforts "to maintain and improve the quality of care for the mentally ill in the family care program”. (Mental Hygiene Law § 7.15 [c].) In addition to the statutory provisions, the agreement governing the plaintiff’s residence at the family care home, which, as aforementioned, is certified by the Office of Mental Health, provides that the family care provider "in conjunction with the family care staff, will ensure that appropriate services are obtained to meet adequate psychiatric, medical, social and transportational needs.”
Similarly, the Social Services Law of the State of New York, as well as regulations promulgated thereunder, mandate adult protective services (PSA) for certain persons over the age of 18, who have mental or physical impairments. For example, article 9-B of the Social Services Law, as well as the Rules and Regulations promulgated thereunder, would appear to dictate that PSA be made available to persons, like Anthony M., who are living in residential care facilities. For instance, section 473 (1) of the Social Services Law directs that social services officials be responsible as follows: "such officials shall provide protective services in accordance with federal and state regulations to or for individuals without regard to income who, because of mental or physical dysfunction, are unable to manage their own resources, carry out the activities of daily living, or protect themselves from neglect or hazardous situations without assistance from others and have no one available who is willing and able to assist them responsibly.” The statute further directs, in relevant part, that the services include the following:
"(b) arranging for medical and psychiatric services to evaluate and whenever possible to safeguard and improve the circumstances of those with serious impairments;
*811 "(c) arranging, when necessary, for * * * conservatorship[*] * * * either directly or through referral to another appropriate agency”.
The regulations also mandate PSA for persons over the age of 18, who are unable to meet their essential needs because of mental impairment. (18 NYCRR 457.1 [b].) The permissible services include not only arranging for a "conservatorship”, but providing advocacy and assistance in arranging for legal services, as well. (18 NYCRR 457.1 [c] [7], [8].)
It would further appear that both the statute and regulations contemplate that PSA be made available to those individuals for whom provision is made in Social Services Law § 473 (1). For example, subdivision (2) (a) of the same section states as follows: "In that the effective delivery of protective services for adults requires a network of professional consultants and services providers, local social services districts shall plan with other public * * * agencies including but not limited to * * * mental health * * * for the purpose of assuring maximum local understanding, coordination and cooperative action in the provisions of appropriate services.” The fact that PSA should be made available to permanent residents of residential care facilities is indicated by the regulations, which, for example, direct that all PSA clients must receive monthly visits in their homes, unless they are residents of such facilities, in which event they must be visited semiannually. (18 NYCRR 457.5 [b] [2] [i].)
It should also be emphasized that the foregoing statutory and regulatory provisions contemplate cooperative action between public service agencies, including those agencies involved with protective services for adults and mental health. Certainly, as was ultimately done in the pending case, the director of the Willard Psychiatric Center is authorized to make application for a court order authorizing surgery. (Mental Hygiene Law § 33.03 [b] [4], [5]; see also, 14 NYCRR 27.9 [b].) In this connection, "facility” is defined to include any place in which services for the mentally disabled are provided and includes but is not limited to a psychiatric center. (Mental Hygiene Law § 1.03 [6].) In addition, and alternatively, a proceeding could be commenced under article 81 of the Men *812 tal Hygiene Law for the appointment of a guardian of the person, who, in turn, would be permitted to consent to generally accepted routine or major medical treatment. (Mental Hygiene Law § 81.22 [a] [8].) As previously indicated by this court, the persons authorized to commence such a proceeding are almost all inclusive, and would include "a person otherwise concerned with the welfare of the person alleged to be incapacitated”, such as a public agency, including the Department of Social Services in the county where the person alleged to be incapacitated maintains their residence regardless of the receipt of public assistance. (Mental Hygiene Law § 81.06 [6]; see, Matter of Rochester Gen. Hosp. [Levin], 158 Misc 2d 522 [1993].) Based upon the statutory and regulatory authority, this court would generally not have any reservation about granting the application for declaratory judgment, directing that the respective defendants comply with their lawful responsibilities, especially since the defendants, in opposition to the summary judgment motions, have not addressed the merits of the complaint. However, they contend that the court should not exercise its discretion in this matter because the surgery performed upon Anthony M. has rendered the action moot.
In the decision of Matter of Hearst Corp. v Clyne (50 NY2d 707, 713-714 [1980]), the Court of Appeals stated as follows: "It is a fundamental principle of our jurisprudence that the power of a court to declare the law only arises out of, and is limited to, determining the rights of persons which are actually controverted in a particular case pending before the tribunal (Matter of State Ind. Comm., 224 NY 13, 16; California v San Pablo & Tulare R. R., 149 US 308, 314-315). This principle, which forbids courts to pass on academic, hypothetical, moot, or otherwise abstract questions, is founded both in constitutional separation-of-powers doctrine, and in methodological strictures which inhere in the decisional process of a common-law judiciary.” Nevertheless, the Court noted the "exception to the doctrine which permits the courts to preserve for review important and recurring issues which, by virtue of their relatively brief existence, would be rendered otherwise nonreviewable” (at 714). In the Court of Appeals, at least, the existence of three common factors are necessary in order to invoke the exception to the mootness doctrine: "(1) a likelihood of repetition, either between the parties or among other members of the public; (2) a phenomenon typically evading review; and (3) a showing of significant or important *813 questions not previously passed on, i.e., substantial and novel issues.” (Matter of Hearst Corp. v Clyne, supra, at 714-715.)
If the same three factors were applied in the pending case, there would be little, if any, issue concerning existence of several of such factors. For example, the prognosis for future development of the same condition of the eyelid, as well as the age of Anthony M., would indicate the likelihood of future surgical decisions in his case. Furthermore, because of the policy in the State of New York, presumably there are many persons who had formerly been in-patients at psychiatric centers, who are now residing in a community setting, and the same legal issues will arise when their medical conditions require surgical intervention. A review of the case law discloses that this rather significant question has not previously been passed upon by the courts of this State. However, the more difficult issue is whether or not the issue is one that typically may evade review in future cases.
Based upon this court’s experience, in the cases involving persons without families and unable to give their own consent, the necessity for medical treatment and/or surgical intervention is frequently and exclusively within the knowledge of the social agencies providing services. The defendants contend that the Mental Hygiene Legal Service could commence a petition under article 81 of the Mental Hygiene Law. Again, however, as a practical matter, this agency oftentimes will not have prior knowledge of the need for such a proceeding, and usually will be appointed by the court, either as attorney and/or court evaluator by the court, after the commencement of a proceeding for the appointment of a guardian. Similarly, in applications for orders under Mental Hygiene Law § 33.03 (b) (5) and 14 NYCRR 27.9 (b), authorizing surgical intervention by the Court, the Mental Hygiene Legal Service is most commonly appointed by the court after receipt of a proposed order to show cause. Thus, in the case of someone, like Anthony M., who is without relatives, unless an application is brought by a representative of the Office of Mental Health or local Department of Social Services, there will be no opportunity to litigate the legal issue presented in the case. Furthermore, and most important, if the previously announced positions of these agencies are followed in the future, numerous individuals, like Anthony M., may be denied needed medical and/or surgical treatment. Accordingly, this court concludes that the legal issue is one that will typically evade review in the future.
*814 Based on the foregoing, it is hereby
Adjudged that the defendants, Nancy L. Gates, as Commissioner of the Yates County Department of Social Services, and Mary Jo Bane, as Commissioner of the New York State Department of Social Services, have violated plaintiffs right to adult protective services, pursuant to Social Services Law § 473, and the regulations promulgated thereunder, by failing to take action necessary to insure the plaintiff receive required medical care, to wit, surgery for his eye and it is further
Adjudged that the defendants, Anthony N. Mustille, as executive director of the Willard Psychiatric Center, and Richard Surles, as Commissioner of the New York State Office of Mental Health, have violated plaintiffs rights, pursuant to articles 7, 29 and 31 of the Mental Hygiene Law, by failing to timely take action necessary to insure prompt, required medical care, to wit, surgery for his eye, and it is further
Ordered that a permanent injunction issue that the defendants take necessary action to fulfill their statutory duties in the future in accordance with this decision.

 Pursuant to Laws of 1992 (ch 698, § 4 [eff Apr. 1, 1993]), "[w]herever a statute uses the terms conservators or committees, such statute shall be construed to include the term guardian notwithstanding the provisions of [such] article unless the context otherwise requires.”