■ ACADEMY STREET ASSOCIATES et al., Appellants, v ELIOT SPITZER, as Attorney General for the State of New York, Respondent. [856 NYS2d 15]—

Order, Supreme Court, New York County (Walter B. Tolub, J.), entered January 6, 2007, which, upon reargument, adhered to a prior order denying petitioners' application to compel the issuance of a confirmatory letter, affirmed, without costs.

Petitioners are the sponsors of Academy Twins Condominium Association, for which the original offering plan was filed in 1987. After the 12th amendment to the offering plan was filed and accepted in 1991, no further amendments were filed until 2004, when, after the commencement of an investigation by the Attorney General, petitioners submitted a proposed 13th amendment to the Attorney General. Upon the Attorney General's issuance of a deficiency letter rejecting the 13th amendment, petitioners commenced this CPLR article 78 proceeding. Petitioners now appeal from the denial of their petition.

Whether the petition is analyzed as a mandamus to compel the Attorney General to accept for filing the 13th amendment to the offering plan, or a mandamus to review the Attorney General's deficiency letter, petitioners' claims fail in that they have neither identified a clear legal right entitling them to the relief sought nor demonstrated that respondent's determination was arbitrary, capricious or an abuse of discretion (*see* CPLR 7803 [1], [3]; *Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs.*, 77 NY2d 753, 757-758 [1991]). The propriety of the deficiency letter was established, without more, by the failure of petitioner Academy Street Associates, one of the two sponsors, to provide the required certification, under penalty of perjury, that, after review and investigation by Academy's principals, the submission sets forth the complete terms of the offering and does not omit any material fact or contain any misstatement of material fact (*see* 13 NYCRR 20.2 [c] [5] [i] [A-1]; 20.4 [b]). Further, an amendment to an offering plan must disclose all material changes, including "any lawsuits, administrative proceedings or other proceedings the outcome of which may

materially affect the offering, the property, the rights of unit owners, sponsor's capacity to perform all of its obligations under the plan, the condominium or the operation of the condominium" (13 NYCRR 20.5 [c] [1]). The deficiency letter states that the 13th amendment was rejected based on its failure to make adequate disclosure of, among other things, the identity and background of certain principals of the sponsors, prior litigation involving the sponsors, a prior investigation under the Martin Act, and prior sales practices in which the sponsors engaged in sales activity without updating the existing offering plan or providing a purchase agreement to prospective purchasers. It was neither arbitrary nor capricious for respondent to conclude that these are material facts that may have significantly altered the "total mix" of information available to the investor (*see State of New York v Rachmani Corp.*, 71 NY2d 718 [1988]). Accordingly, respondent's rejection of the proposed 13th amendment to the offering plan was properly sustained.

We recognize that this appeal could be decided based solely on Academy's failure to provide the required certification. It is nonetheless appropriate to reach the merits of the Attorney General's substantive objections to the statements and omissions of the proposed 13th amendment, which objections have been fully litigated in Supreme Court and on appeal, in the interest of avoiding further protracting this litigation. After all, if we did not reach the merits of those objections, the issues they present would remain in dispute between the parties. We reiterate that, insofar as reasonable minds could differ as to the need to disclose the information in question, we are required to uphold the Attorney General's rational determination that such disclosure was required in an amendment to the offering plan submitted 13 years after the previous amendment.

We have considered petitioners' remaining arguments and find them unavailing. Concur—Tom, J.P., Saxe, Friedman and Gonzalez, JJ.

McGuire, J., concurs in a separate memorandum: I agree with the majority that the failure of the sponsors to provide the required certification for one of the sponsors is alone sufficient to compel the conclusion that the Attorney General was not arbitrary and capricious in rejecting the 13th amendment. Although the sponsors point to the allegation in the petition that the failure to provide the certification was a "mere oversight," they do not offer any precedent or authority for the proposition that this Court can overlook it. Accordingly, I also agree that the order appealed from should be affirmed.

I disagree, however, with the majority's determination to

forsake resolving this appeal on that narrow and unavoidable ground. Rather, the majority goes on to note that the Attorney General also rejected the 13th amendment on the ground that the sponsors should have made various disclosures, some of which the majority summarizes, in addition to those that were made in the amendment. Then, the majority sweepingly and unnecessarily determines, in what it apparently regards as an alternative ground of decision, that "[i]t was neither arbitrary nor capricious for [the Attorney General] to conclude that these are material facts that may have significantly altered the total mix of information available to the investor" (internal quotation marks omitted).

The Attorney General does enjoy broad authority in this context to require disclosure. But that broad power is not an unlimited power. Rather, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available" (*State of New York v Rachmani Corp.*, 71 NY2d 718, 726 [1988] [internal quotation marks and citations omitted]).

The majority sets a sweeping precedent upholding each and every one of the items of disclosure sought by the Attorney General even though a narrower ground requires us to affirm in any event. For the majority to opine so unnecessarily implicates the principle that "forbids courts to pass on academic, hypothetical, moot, or otherwise abstract questions, [which] is founded both in constitutional separation-of-powers doctrine, and in methodological strictures which inhere in the decisional process of a common law judiciary" (*Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 713-714 [1980]).

The imprudence of the majority's decision to uphold the Attorney General's determination to require the sponsors to make each and every one of the contested items of disclosure comes into sharper focus when certain of the items are considered. Paragraph 7 of the amendment reads in full as follows: "'7. Prior Litigation: In 2003, the Board of Managers commenced an action against, *inter alia*, [the sponsors], claiming past due common charges. This action was entitled Board of Managers v William Grossman and Action Financial et al., Index No. 600003/03. While all allegations were completely denied, and while [the sponsors] interposed various counterclaims, the parties amicably settled their dispute by a settlement agreement dated January 7, 2005. Annexed hereto is a letter from the Board of Managers of the Association, which we are attaching to this 13th Amend-

ment at their request. This letter contains important information concerning your purchase."[1]

The Attorney General's deficiency letter stated that one of the grounds for rejecting the amendment was that it "must disclose" the litigation with the board, "including the index number[ ], the presiding court[ ], the nature[ ] of the action[ ], [a] summar[y] of the factual allegations and procedural posture[ ], the disposition[ ] and the present status[ ]." In addition, "the amendment must disclose a detailed description of the terms and conditions of the settlement of the action."

As the sponsors point out, the amendment did provide the index number, the nature of the action (a claim by the board of "past due common charges") and the procedural posture, disposition and present status of the action (by stating, among other things, that the action was "amicably settled . . . by a settlement agreement dated January 7, 2005," and including the accompanying letter in which the board confirmed the amicable resolution of the dispute and the sponsors' currency in their obligations). The sponsors also assert without contradiction by the Attorney General that the settlement agreement contains some 32 different provisions and is approximately 60 pages long.

In part because of the facts that were disclosed (including that the action was "amicably settled"), the sponsors contend that there is no "substantial likelihood" that the additional disclosures sought by the Attorney General (the "presiding court[ ]," a "summar[y] of the factual allegations" and a "detailed description of the terms and conditions of the settlement") would be regarded as material by a reasonable investor. Especially because the action was settled without any finding or admission of fault, the sponsors contend that to require detailed disclosure of unproven allegations against them "would merely prejudice a potential purchase without being material." In addition, the sponsors also rely—with at least some facial support from the decision in *Rachmani Corp.*—that they are not required to spoon-feed potential investors (71 NY2d at 728 ["there is no requirement that information already adequately disclosed be spoonfed to (potential investors in a cooperative)" (internal quotation marks omitted)]).

With one exception, the Attorney General also insisted that the sponsors provide the same disclosures concerning the

---

**1.** The letter, among other things, confirmed the settlement, stated that the board was "fully satisfied" with the settlement, "welcome[d] all new purchasers" and stated that the sponsors were "current in their obligations to the Association."

lawsuit commenced by the sponsors against the Attorney General and the president of the board in October 2005 (*Academy I*). *Academy I* did not end in a settlement, and thus the one exception is that the Attorney General did not require "a detailed description of the terms and conditions of the settlement of the action." Thus, the Attorney General's deficiency letter took the position that the sponsors were required to disclose "the index number[ ]," the "presiding court[ ]," the nature[ ] of the action[ ]," a "summar[y] of the factual allegations and procedural posture[ ], the disposition[ ] and the present status[ ]" of *Academy I*.

As the Attorney General acknowledges, *Academy I* sought (1) an order deeming the 13th amendment accepted for filing because the Attorney General did not act on it within 30 days of its submission, as required by General Business Law § 352-e (2), (2) one million dollars in damages and (3) an extension of time in which the sponsors could sell their condominium units under the settlement of the action brought by the Board. In June 2006, Supreme Court dismissed *Academy I* as against the Attorney General, as barred by the four-month statute of limitations, leaving only the sponsors' claim against the board's president for additional time in which to sell their units.[2] Following the dismissal by Supreme Court, the sponsors resubmitted the 13th amendment. Thereafter, within 30 days, the Attorney General issued the deficiency letter at issue on this appeal requiring, among other things, the disclosures noted above with respect to *Academy I*.

Now, on this appeal, the sponsors urge that none of the disclosures sought with respect to *Academy I* are material. The Attorney General makes no effort in its brief to defend the position that the sponsors should have made these disclosures with respect to the causes of action in *Academy I* asserted against the Attorney General. Rather, the Attorney General focuses solely on the relief sought against the president of the board and argues only that the sponsors should have made the required disclosures because they "sought to alter the amount of time they have to divest themselves of all their Condominium units."

Presumably, the Attorney General has sound reasons for offering only this narrow defense of the position it asserted in the deficiency letter regarding the absence of the disclosures relating to *Academy I*. It might be, for example, that the Attorney General concluded that it would be difficult to defend the no-

---

2. On October 30, 2007, a panel of this Court affirmed the order dismissing *Academy I* as against the Attorney General (44 AD3d 592 [2007]).

tion that there is a substantial likelihood that a reasonable investor would regard as material a disclosure that the sponsors (unsuccessfully) alleged in *Academy I* that the failure of the Attorney General to act on the 13th amendment in a timely fashion required that the amendment be deemed accepted. In any event, even putting aside that it is unnecessary, it is even more difficult to understand why the majority thinks it appropriate to uphold unreservedly the Attorney General's position with respect to all the disclosures he sought regarding *Academy I.*

At least one more of the other alleged disclosure failures should be mentioned. In paragraph 9 of the 13th amendment, entitled "Investigation," the sponsors disclosed as follows: "The Attorney General has made inquiry of the Sponsors regarding certain activities regarding the Martin Act, concerning how the Sponsors sold units and made disclosures in accordance with the New York General Business Law." In the deficiency letter, dated August 14, 2006, the Attorney General asserted that the amendment "must also disclose that the Attorney General commenced an investigation, still ongoing, in 2003, into potential violations by the Sponsors of Article 23-A of the General Business Law pertaining *to failure of the Sponsors to provide full and fair disclosure to potential purchasers*" (emphasis added). As the Attorney General concedes, that investigation never resulted in either an action by the Attorney General against the sponsors alleging, or any admission by the sponsors that they had committed, such violations. Of course, as the Attorney General argues, it is not required to bring an action whenever it believes that an action lawfully could be brought. But it is not at all obvious that the Attorney General properly can require, as the italicized language would indicate, that the sponsor in fact committed such disclosure violations.

I do not of course take a position on whether the sponsors' arguments concerning each of the disclosures sought regarding the two lawsuits and the investigation are convincing. In upholding the Attorney General's determination to require each of these items of disclosure (and all of the other items), the majority does more than unnecessarily resolve everything in dispute in this case between these sponsors and the Attorney General. In addition, the majority unnecessarily affects future disputes between other sponsors and the Attorney General.

Perhaps reasonable minds could differ on whether one or more or even all of the disclosures sought by the Attorney General are material under the applicable standard. At the very least, however, some of them are questionable. With respect to

the items of disclosure highlighted above—those regarding the two lawsuits and the investigation—the majority provides no reason to conclude that they are material. Moreover, the majority ignores that the Attorney General makes no effort to defend the position staked out in the deficiency letter that the sponsors were required to make each of the specific disclosures relating to the causes of action in *Academy I* asserted against the Attorney General. Rather, the majority sweeps up these and every one of the other contested disclosures in its conclusory assertion that "[i]t was neither arbitrary nor capricious for [the Attorney General] to conclude that these are material facts that may have significantly altered the total mix of information available to the investor" (internal quotation marks omitted).[3]

The majority's sole defense for reaching the merits of each and every one of the disclosures demanded by the Attorney General is "the interest of avoiding further protracting this litigation." As the majority goes on to explain, "[a]fter all, if we did not reach the merits of those objections, the issues they present would remain in dispute between the parties."

The flaw in this reasoning is that it simply assumes that if we were to decide this appeal solely on the narrow ground that in any event requires us to affirm, there would be no negotiated resolution of the dispute. The majority does not and cannot know that no negotiated resolution would ensue, just as I do not and cannot know that a negotiated resolution would ensue. But if we were to rest our affirmance solely on the narrow ground, this much is clear: both sides would have incentives to reach a negotiated resolution as each thereby would avoid the risk of an adverse decision on one or more of the contested items of disclosure. Accordingly, another weakness inheres in the majority's approach, because encouraging the settlement of disputes through negotiation and compromise is a venerable and important public policy (*see White v Old Dominion S.S. Co.*, 102 NY 660, 662 [1886]; *see also Mitchell v New York Hosp.*, 61 NY2d 208, 214 [1984]).

To reiterate: the majority not only unnecessarily resolves each and every one of the disputed items of disclosure, it does so in a wholly conclusory manner and needlessly sets a prece-

---

3. The requisite conclusion by the Attorney General is that there be a "*substantial likelihood* that disclosure of the omitted material fact *would have* been viewed by the reasonable investor as having significantly altered the total mix of information made available" (*Rachmani Corp.*, 71 NY2d at 726 [internal quotation marks omitted and emphasis added]).

dent that will affect future disputes between other sponsors and the Attorney General.[4]

---

4. No special acuity is needed to see that in future disputes with sponsors the Attorney General will be able to tout this Court's broad holding and point to the record on appeal to establish the particulars and full sweep of that holding.