[33 NYS3d 174]

In the Matter of TIEMANN PLACE REALTY, LLC, et al., Petitioners/Counterclaim Respondents-Respondents, v 55 TIEMANN OWNERS CORP., Respondent/Counterclaim Petitioner-Appellant, et al., Respondents, et al., Additional Counterclaim Respondents.

First Department, May 24, 2016

## APPEARANCES OF COUNSEL

*Gallet Dreyer & Berkey, LLP*, New York City (*Pamela Gallagher* of counsel), for appellant.

*Pavia Harcourt LLP*, New York City (*Brandon C. Sherman, Ivan Serchuk* and *Adam D. Mitzner* of counsel), for respondents.

**OPINION OF THE COURT**

Acosta, J.P.

We are called upon to decide the status of holders of unsold shares in the context of control of a coop's board of directors. Specifically, four days before the 55 Tiemann Owners Corp.'s (the coop) scheduled June 17, 2014 annual meeting, the sponsor, Tiemann Place Realty, LLC, assigned an apartment, with its 600 allocated shares, to George Johnson. Pursuant to the coop's proprietary lease and a stipulation signed by the sponsor in federal court, the 600 allocated shares retained the status of "unsold shares," because neither Johnson nor any member of his immediate family ever lived in the apartment. The stipulation also restricted the number of directors elected by holders of unsold shares to one less than the majority (that is, to no more than two of the five directors). In the June 2014 election, three out of the five directors were voted in by holders of unsold shares. We hold that Johnson, as an assignee of the sponsor, was a holder of unsold shares and was therefore bound by the stipulation even though he was not a signatory to the stipulation. Accordingly, the results of the June 17, 2014 election must be set aside.

## Background

Counterclaim petitioner 55 Tiemann Owners Corp. is a New York cooperative corporation located at 55 Tiemann Place in Manhattan. In 1992, the coop was in financial trouble. As a result of nonpayment of the mortgage, the mortgagee, the Federal Home Loan Mortgage Corporation (FHLMC), commenced a foreclosure action in the U.S. District Court for the Southern District of New York.

In late 1996, additional counterclaim respondents Anthony and Joseph Pistilli formed Tiemann Place Realty, LLC (TPR). On November 12, 1996, FHLMC assigned the coop's mortgage to TPR, which thereby became the successor sponsor and real party in interest in the federal foreclosure action. On March 25, 1997, the parties to the federal foreclosure action entered into a stipulation of settlement. The stipulation provided, among other things, that TPR was to be deemed a holder of unsold shares (HUS) and that all shares transferred to it would be treated as unsold shares. For the duration of time that the mortgage remained outstanding, TPR would be entitled to elect two of the coop board's five members, and, thereafter, "holders of unsold shares shall be entitled to elect one less than a majority of the members of the board of directors."

The stipulation provided that TPR had the right to sell or sublease the apartments that had been transferred to it "until any such apartment is sold to a purchaser who is not an investor and who intends that the apartment be occupied by himself or a family member as a residence." This provision echoed the coop proprietary lease's provision that each block of unsold shares retains the status of unsold shares

> "irrespective of the number of transfers thereof but only until (1) it becomes the property of a purchaser for bona fide occupancy (by himself or a person related to him or her by blood or marriage) of the apartment to which such shares are allocated, or (2) the holder of such block òf shares (or a person related to him or her by blood or marriage) becomes a bona fide occupant of the apartment to which they are allocated."

The proprietary lease further provided, "The term 'holder of Unsold Shares' wherever used herein shall include a 'purchaser of Unsold Shares', such terms being used interchangeably in this lease."

The stipulation was incorporated into the offering plan by amendment dated March 7, 2013, as of which date TPR remained the holder of all unsold shares. The proprietary lease, in turn, incorporated all of the terms of the offering plan.

On June 13, 2014, TPR assigned apartment 22, with its 600 allocated shares, to petitioner George Johnson. By virtue of this transfer, TPR's ownership dropped from 16,372 to 15,772 of the coop's 25,808 outstanding shares. The assignment was made "subject to the covenants, conditions and limitations" contained in the proprietary lease, and, in accepting the assignment, Johnson agreed to "assume each and every obligation under the Lease." Neither Johnson nor any member of his immediate family ever lived in apartment 22.

At the annual shareholder meeting and election of directors on June 17, 2014, TPR's proxy, Gus Sifneos, cast ballots on behalf of TPR for its principals (Anthony Pistilli and Joseph Pistilli). Sifneos did not vote for anyone else. Johnson voted all 600 of his shares for himself. As a result, Anthony Pistilli, Joseph Pistilli, Johnson, Eric Maurer, and Leslie Wagner were elected to the board; thus, HUSs controlled three of the five directors, in violation of the stipulation and the coop proprietary lease.

On August 27, 2014, Wagner, the coop's treasurer, served a notice on all of the coop's shareholders stating that a special

shareholders meeting would be held on September 10, 2014, for the purpose of electing new directors. The purpose of the new election was to "correct" the results of the June 2014 election, in which HUSs—including Johnson—had elected three of the five directors in alleged violation of the stipulation's provision that HUSs could elect only one director less than a majority, i.e., two directors. At the September 2014 meeting, Joseph Pistilli, Rosa Alvarado, Eric Maurer, Leslie Wagner, and Ian Watson were elected to the coop board.

TPR and Johnson (hereinafter, respondents) commenced a proceeding in Supreme Court, New York County, pursuant to CPLR 7803 (3) and 6301, against the coop and newly elected directors Alvarado and Watson, seeking to enjoin the coop from recognizing Alvarado and Watson as directors. Respondents contended that the September election violated the coop bylaws and was void, because the notice provided only for the election of a new board, and said nothing about the removal of existing directors.

The coop, Alvarado and Watson served an answer denying the petition's material allegations and asserting affirmative defenses. Included with the answer was a counterclaim petition on behalf of the coop to set aside the June election, which contended that Johnson was an HUS, and, as such, was bound by the stipulation's provision that HUSs could elect only one less than a majority of the directors.

Supreme Court denied both petitions and dismissed the proceeding. As pertinent on this appeal, the court found:

> "[C]ounterclaim petitioner has not shown that either the conduct or the results of the June 17, 2014 election of directors violated that provision of the Stipulation which bars TPR and its assigns and successors from electing more than one less than the majority of the board of directors. Notably, [the coop] argues that TPR and Johnson, together, violated the Stipulation. Johnson, however, is not a signatory to the Stipulation, and he is not bound by its terms. [The coop's] argument, that Johnson is bound by the Stipulation, as the assignee of TPR's interest in the unsold shares allocated to his apartment, would make the Stipulation binding upon all subsequent purchasers of the unsold shares currently held by TPR and create two classes of shareholders, leaving aside TPR, to wit[,] those who

purchased their shares prior to entry of the Settlement and those who, like Johnson, purchased their shares thereafter. Finally, to void the results of the June 17, 2014 election would call into question any contractual commitment made by the board between June 17, 2014 and September 10, 2014. [The coop] gives no reason for doing so." (2014 NY Slip Op 33218[U], *5-6 [Sup Ct, NY County 2014].)

## Analysis

The appeal from the denial of the counterclaim petition to set aside the results of the June 17, 2014 election was not rendered moot by the September 2014 election (*Saratoga County Chamber of Commerce v Pataki*, 100 NY2d 801, 812 [2003] ["Where . . . a judicial determination carries immediate, practical consequences for the parties, the controversy is not moot"], *cert denied*, 540 US 1017 [2003]; *see also Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 713 [1980]). This Court is being called upon to interpret the language of the coop's proprietary lease and stipulation, which was incorporated into the coop's offering plan: this language will apply to every election of directors. There is no question that respondents could continue to violate the plain meaning of the stipulation by claiming that those who purchase shares directly from the sponsor and do not live in their apartments are not holders of unsold shares.

■ Turning to the merits, Johnson is a holder of unsold shares and is bound by the terms of the stipulation, which precludes HUSs from electing a majority of the coop's directors. The election restriction set forth in the stipulation is generally enforceable (*see e.g. Mundiya v Beattie*, 2 AD3d 317, 318 [1st Dept 2003] ["Supreme Court properly interpreted the condominium bylaws to restrict the sponsor to the election of no more than two directors 'by reason of' its vote of unsold shares"]). Moreover, Johnson's status as an HUS is determined by the "controlling documents," including the coop's "bylaws and the proprietary lease," by applying "the usual rules of contract interpretation" (*Kralik v 239 E. 79th St. Owners Corp.*, 5 NY3d 54, 59 [2005] [internal quotation marks omitted]; *see e.g. Mittman v Netherland Gardens Corp.*, 55 AD3d 512, 513 [1st Dept 2008]).

The stipulation provided that TPR's unsold shares would remain such "until any such apartment is sold to a purchaser

who is not an investor and who intends that the apartment be occupied by himself or a family member as a residence." The proprietary lease similarly provided that each block of unsold shares retains that status "irrespective of the number of transfers thereof," unless

> "(1) it becomes the property of a purchaser for bona fide occupancy (by himself or a person related to him or her by blood or marriage) of the apartment to which such shares are allocated, or (2) the holder of such block of shares (or a person related to him or her by blood or marriage) becomes a bona fide occupant of the apartment to which they are allocated."

The proprietary lease added, "The term 'holder of Unsold Shares' wherever used herein shall include a 'purchaser of Unsold Shares', such terms being used interchangeably in this lease."

The stipulation containing the election restriction, was incorporated into the offering plan in March 2013, at which time TPR remained the holder of all unsold shares. The proprietary lease, in turn, incorporated all of the terms of the offering plan. In June 2014, days before the election, TPR assigned apartment 22 to Johnson. The assignment was made "subject to the covenants, conditions and limitations" contained in the proprietary lease, and, in accepting the assignment, Johnson agreed to "assume each and every obligation under the Lease." It is undisputed that neither Johnson nor any member of his immediate family ever lived in apartment 22.

The foregoing documents, including Johnson's express agreement to take subject to the provisions of the proprietary lease, which incorporated the stipulation, make clear that he was an HUS and was bound by the stipulation's provisions, including the election restriction (see *Davies, Hardy, Ives & Lawther v Abbott*, 38 NY2d 216, 218-219 [1975]).

TPR should not be permitted to frustrate its obligations under the offering plan or stipulation by transferring its shares to puppet entities to syphon votes away from resident shareholder candidates in order to control the board well beyond the period contemplated by the Attorney General (*420 W 206th St. Owners Corp. v Lorick*, 2014 NY Slip Op 30348[U], *9-10 [Sup Ct, NY County 2014] ["The AG regulations, among other things, prohibit sponsors and holders of unsold shares from indefinitely controlling a cooperative's board of directors"]). Indeed, there is

no question that the sole purpose of TPR's assigning 600 shares to Johnson just four days before the June 17, 2014, board election was to avoid the provision that prohibited holders of unsold shares from electing more than two directors.

To the extent that *Matter of Madison v Striggles* (228 AD2d 170 [1st Dept 1996]) is inconsistent, we have chosen not to follow it (*see Mundiya v Beattie*, 2 AD3d at 318; *Matter of Visutton Assoc. v Anita Terrace Owners*, 254 AD2d 295, 296 [2d Dept 1998], *lv denied* 93 NY2d 803 [1999]; *Matter of Flagg Ct. Realty Co. v Flagg Ct. Owners Corp.*, 230 AD2d 740 [2d Dept 1996]).

■ Respondents claim that construing the stipulation as binding upon all of TPR's assignees who are HUSs would violate Business Corporation Law § 501 (c) by treating HUSs differently from other coop shareholders (*see* Business Corporation Law § 501 [c] ["each share shall be equal to every other share of the same class"]). This argument is without merit. HUSs effectively constitute a separate class of shareholders, and coop plans that treat them differently from other shareholders "have been held not to impair the equality of voting rights of shares" (*Rego Park Gardens Assoc. v Rego Park Gardens Owners*, 174 AD2d 337, 340 [1st Dept 1991], *lv denied*, 78 NY2d 859 [1991]).

Accordingly, the judgment of the Supreme Court, New York County (Donna M. Mills, J.), entered December 11, 2014, to the extent appealed from, denying the counterclaim petition to set aside the results of the June 17, 2014, election of the board of directors of counterclaim petitioner 55 Tiemann Owners Corp., and dismissing the proceeding brought pursuant to CPLR article 78, should be reversed, on the law, with costs, and the counterclaim petition granted.

RENWICK, MANZANET-DANIELS, KAPNICK and GESMER, JJ., concur.

Judgment, Supreme Court, New York County, entered December 11, 2014, reversed, on the law, to the extent appealed from, with costs, and the counterclaim petition granted.