■ MENTAL HYGIENE LEGAL SERVICE, on Behalf of CHRISTINE D., Appellant, v RICHARD BENNETT et al., Respondents. [746 NYS2d 308]

In January 1997 Christine D. (hereinafter the plaintiff) was admitted to Hudson River Psychiatric Center (hereinafter Hudson River), a nonsecure state psychiatric facility, as an involuntary patient. The plaintiff was diagnosed with schizoaffective disorder and borderline personality disorder. She had a long history of psychiatric hospitalizations and suicide attempts.

Subsequently, Hudson River petitioned the Supreme Court for authorization to administer antipsychotic drugs to the plaintiff over her objection. After a hearing, the Supreme Court found that the plaintiff "lack[ed] the capacity to determine the course of [her] own treatment" and found that the treatment was "narrowly tailored to give substantive effect to the [plaintiff's] liberty interest" (*Rivers v Katz,* 67 NY2d 485, 497). Thus, the Supreme Court issued an order dated April 17, 1997, pursuant to *Rivers v Katz (supra)* authorizing Hudson River to administer antipsychotic drugs to the plaintiff over her objection.

In February 1999, upon the application of Hudson River, the plaintiff was transferred to Mid-Hudson Forensic Psychiatric Center (hereinafter Mid-Hudson), a secure state psychiatric facility. While at Mid-Hudson the plaintiff refused to take her medication. The staff at Mid-Hudson informed the plaintiff that there was a court order directing her to take the medication over objection, and the plaintiff commenced this action seeking, inter alia, a judgment declaring that the involuntary medication by the defendants of the plaintiff pursuant to an order of the Supreme Court, Dutchess County, dated April 17, 1997, violated her statutory, common-law, and constitutional rights.

The Supreme Court granted Mid-Hudson's cross motion for

summary judgment and dismissed the complaint, finding that the authority of the April 17, 1997, order implicitly extended to Mid-Hudson due to its status as a secure facility. The Supreme Court found that Mid-Hudson functioned as a "temporary auxiliary to, or extension of, the originating hospital." We agree.

While this action was pending, the plaintiff was discharged from Mid-Hudson and transferred back to Hudson River on September 22, 1999. Thus, because any determination by this Court will not affect the rights of the parties with respect to this controversy, the appeal would ordinarily be dismissed as academic (see Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714). However, we find that the mootness doctrine does not preclude appellate review because the legal issues presented in this case are substantial and novel, likely to be repeated, and will typically evade review because of the limited duration of the patient's hospitalization at a secure state facility (see Matter of Hearst Corp. v Clyne, supra at 714-715; Matter of Chenier v Richard W., 82 NY2d 830, 832).

The Supreme Court properly determined that in the limited circumstances where an involuntarily-committed patient is transferred from a nonsecure state psychiatric facility to a secure state psychiatric facility, an order authorizing the nonsecure facility to medicate a patient over her objection implicitly extends to the secure facility as its designee.

Mid-Hudson is one of two secure psychiatric facilities within the Office of Mental Health (hereinafter OMH) which offers programs and services for the care and treatment of the mentally ill comparable to those programs and services at other psychiatric hospitals in the OMH such as Hudson River (see 14 NYCRR 57.1). The other secure facility is Kirby Forensic Psychiatric Center (hereinafter Kirby). In addition, Mid-Hudson and Kirby have staff and physical surroundings which enable them to offer programs and services to patients requiring closer supervision than can be given at other hospitals (see 14 NYCRR 57.1).

Patients are transferred from nonsecure state psychiatric facilities to one of the secure state facilities when (1) there exists a substantial risk that the patient may cause physical harm to others, manifested by homicidal or other violent behavior placing others in reasonable fear of serious physical harm, (2) reasonable efforts at treatment were made and did not eliminate such substantial risk of physical harm to others, and (3) the patient needs the close supervision provided at Mid-Hudson or Kirby (see 14 NYCRR 57.2 [a] [1], [2], [3]).

Furthermore, in order to obtain a court order authorizing

the administration of antipsychotic drugs to an involuntarily-committed patient over objection, the facility where a patient is being treated must comply with the regulations of the Commissioner (*see* 14 NYCRR 527.8 [c] [4]).

In the landmark case of *Rivers v Katz* (*supra*), the Court of Appeals was presented with the issue of whether and under what circumstances the state may forcibly administer antipsychotic drugs to a mentally-ill patient involuntarily confined to a state facility. The Court of Appeals observed that "every individual 'of adult years and sound mind has a right to determine what shall be done with his [or her] own body' * * * and to control the course of his [or her] medical treatment" (*Rivers v Katz, supra* at 492, quoting *Schloendorff v Society of N.Y. Hosp.,* 211 NY 125, 129). This fundamental right is coextensive with the patient's liberty interest protected by the due process clause of the State Constitution (*see Rivers v Katz, supra* at 493). However, the Court of Appeals recognized that "the right to reject treatment with antipsychotic medication is not absolute and under certain circumstances may have to yield to compelling State interests" (*Rivers v Katz, supra* at 495).

Thus, in order to administer antipsychotic medication to an involuntarily-committed patient over objection, there must be a judicial determination that the State has established by clear and convincing evidence that the patient does not have the capacity to decide for his or herself whether or not to take the medication, and that the treatment was narrowly tailored to give substantive effect to the patient's liberty interest (*see Rivers v Katz, supra* at 497).

Therefore, we agree with the Supreme Court that since the plaintiff was transferred to Mid-Hudson pursuant to part 57 of the Commissioner's regulations, Mid-Hudson was not required to re-validate the existing Rivers order issued to Hudson River, which had not expired. At the time of the transfer, there existed a judicial determination, pursuant to *Rivers v Katz* (*supra*), that the plaintiff lacked the capacity to decide for herself whether to take the antipsychotic drugs and the basis for that determination had not been challenged. Accordingly, the Supreme Court properly granted the defendants' cross motion for summary judgment dismissing the complaint and properly denied the plaintiff's motion for summary judgment.

In light of the above determination, the plaintiff's remaining contentions are academic.

We note that since this is a declaratory judgment action, the Supreme Court should have directed the entry of a declaration in favor of the defendants rather than dismissal of the

complaint (see Lanza v Wagner, 11 NY2d 317, 334, appeal dismissed 371 US 74, cert denied 371 US 901). O'Brien, J.P., Friedmann, McGinity and H. Miller, JJ., concur.